Johnson, J.
No question has been raised, as to what were the rights of Samuel F. Isaacs, and the defendant, in the real estate devised by Abraham Isaacs to the latter, and for the price of which the bond, on which this suit is founded, was given: and it is very clear, that under the rule in Vaux v. Nesbit, 1 M’C. Ch. 352, the land was liable to escheat, but that the defendant, although an alien, was intitled take under the devise, and to hold until office found; so that Samuel F. Isaacs had no interest in it, either presently, or prospectively. The defendant, therefore, acquired nothing by his release, and he, Samuel F. Isaacs, parted with no right, nor suffered any loss; and if we add to this, the circumstance, that the defendant acted upon the advice of counsel leárned in the law, we shall have no difficulty in coming to the conclusion, assumed in the argument, that he purchased in the mistaken belief, that he, himself, had no interest in the land, but that on the contrary, the fee was in Samuel F. Isaacs, by descent. The question then arises, whether this contract can be enforced against him; or to put it abstractedly, whether one is bound by a contract, entered into under a mistaken deduction of law from facts which were known to him, by which he acquired nothing, and the party contracted with, parted with no right, nor suffered any loss.
If this proposition is to be considered with reference to the rules of morality, there could be no diversity of opinion about it. *648 The plaintiff seeks, in this action, to recover that, which, of natural right, belongs to the defendant. It is an universal principle, founded in reason, that no one is intitled to have, or retain that, which ex aequo et bono belongs to another: a principle found in every code, and circumscribed in its application only by positiva rules, founded on the convenience and necessities of mankind; and when rightly understood, says Sir Henry Finch, the very maxims and principles of the positive law will yield to it, as to a higher and more perfect law. Finch’s Law, Book 1, Ch. 3.
In the inquiry, whether this principle is opposed in its application to the case under consideration by any other conflicting1 principle, or positive rule, we are met with the maxim, ignorantia juris non excusat; which, it is insisted on behalf of the plaintiff, covers the precise ground, and supersedes it. To allow one to shelter himself from the punishment due to crime, or to excuse a wrong done to, or right withheld from, an individual, under a pretended, or even real ignorance of the law, would uproot the very foundation of society: and in this we see the reason and propriety of the maxim, and the fitness of its application. But there is certainly nothing in the principle, which authorizes its application in a manner calculated to effectuate a wrong; and, unless the principle, ex aequo et bono,is erroneous, clearly it would so operate, if applied to this case. If it is to be regarded as a mere arbitrary rule, and to take effect according to the terms in which it is expressed, it is equally evident, that it was designed as one of the means of attaining right, and preventing wrong. The very necessity for an excuse presupposes that some wrong has been done, or some right withheld. He that has done neither, needs no excuse, for he is already justified; so that whether the rule is interpreted according to its letter, or spirit, its application is limited to those cases, in which redress is sought for a wrong done, or a right withheld. J
The propriety, and necessity, of its application, as the means of enforcing the obligation of contracts, is to my mind an utter perversion of the use for which it was designed; for that is sufficiently attained by other rules, of equal obligation, framed for the express purpose. Amongst these, that, which has the strongest analogy to, that contained in the maxim, is that which provides, that no one shall aver against his own deed: but that is founded on a very different principle. The uncertainty of *649 contracts, and the temptations to perjury, incident to the substitution of facts depending on slippery memory, for those reduced to writing, are the foundation of this rule; and it would seem to furnish, itself, a sufficient security against all abuses, without the aid of ignorantia juris non ezcusat: And yet this rule* whilst it is imperative in the interpretation of contracts, is made to promote the great ends of justice, by letting in proof, that the most solemn contract was obtained by fraud, or duress* or other-corrupt, and illegal means; and I am utterly unable to conceive of any solid foundation for the exclusion of proof, that the consideration was founded in a mistake of law./fAll the difficulty and confusion, which have grown out of th® application of the maxim, appear to me to have originated in confounding the terms ignorance and mistake. The former is passive, and does not presume to reason ; and, unless we were permitted to dive into the secret recesses of the heart, its presence is incapable of proof f but the latter presumes to know, when it does not, and supplies palpable evidence of its existence. Hence it was well remarked by Lord Rosslyn* in Fletcher v. Toilet, 5 Ves. 14, that “ ignorance is not mistake.” )
The case in hand furnishes, I think, materials for an apt illustration of this distinction. The case of Vaux v. Nesbit had been recently decided, when this contract was entered into, and the rule established by it was not generally known to the profession. The defendant did not act of his own head, or confide in his own judgment, but sought the advice of counsel; who instructed him, that the land descended to Samuel F. Isaacs, notwithstanding the will; and upon the faith of this advice he gave the bond sued on. Now I hazard little in affirming, that no one who reasons correctly will doubt: 1st. that the defendant did not intend this bond as a gratuity to Samuel F. Isaacs; nor 2dly* that, acting upon the mistake of his counsel, he did intend it as the price of the fee simple of the land. The proof of the mistake is then clearly made out; but if he had acted of his own head, and confiding in his own unassisted judgment, proof of his ignorance would have been impracticable: and his contract might have been set down to the account of a compromise of a doubtful right, or the improvident investment of money on a speculating bargain; and in either view he would have been bound,
*650 Having premised thus much) I will proceed to notiee a few of ^)e teathng cases, of the very many that have been referred to in the argument. ^That of Bilbie v. Lumley, 2 East, 469, is the first, I believe, in which the rule was broadly laid down, that if one paid money to another, voluntarily,-with a full knowledge of all the facts of the case,- he could .not recover-it back on the ground of his ignorance of the law. jI attach no importance to the circumstance,- that there the action was to recover back money paid, and not, as here, to enforce a contract founded upon a mistake of law; for without intending to enter into the inquiry, whether there is, or is not a difference between the two cases, Í incline to think that there is none in principle: for,.in general, the same principle, which furnishes a protection from loss, supplies also the remedy for a wrong. |But the manner in which that case went off is calculated to lessen its authority as- a precedent. Lord Ellenborough superseded the argument of counsel by inquiring, whether any case could be found, in which it had been ruled otherwise; and his own is summed up in the loose ex-pressipn, that there is- nt> saying, to what extent the excuse of ignorance might not be carried, if it were allowed. If his lordship intended to be understood, as using the term ignorance as distinguished- from mistake, then there would be much ground for the apprehension of abuse, if it were allowed as an excuse; and this because it is not susceptible of proof. But if the term is to be understood as identical with mistake, there is no cause of alarm; for that is susceptible of as direct, and satisfactory proof, as any other matter of fact which can enter into a case. His lordship’s conclusion therefore fails; and if this case stood alone, its authority might well be questioned. Nor do I think it derives much support from the case of Brisbane v. Dacres, 5 Taunt. 143. Gibbs, Justice, it is true, enters fully into the doctrine, and maintains the principle with some show of reasoning ; but that is met, and-, I think, more than refuted, by the able argument of Chambre, Justice, drawn from the authority of decided cases, dicta of learned Judges, and the still greater authority of natural reason. And Sir James Mansfield, Chief Justice, whilst he yields to the authority of Bilbie v. Lumley, evidently puts the case itself upon the ground, that, ex ccquo et bono,- the defendant was i-ntitled to retain the money. So also, Heath, Justice, denied that the fact of ignorance had been made out; and *651 predicates his opinion on the ground, that the law was known to the defendant, and that he took upon himself to decide whether it was best for him to pay the money, or dispute the point with his superior officer, and was concluded by his own judgment.
In Shotwell v. Murray, 1 Johns. Ch. R. 512, and Lyon v. Richmond, 2 Id. 56, Chancellor Kent seems to have adopted the cases referred to, as authority upon the point; but neither of these cases turned upon the precise point. In the first, the mistake was in relation to a collateral matter; and the last was judicium, redditum in invitum.
These are the leading cases on that side of the question, and I will now proceed to notice those on the other. That of Lansdown v. Lansdown, Mosely, 364, is the first in the order of time. That case was this: the second of four brothers died seized of land, and the eldest entered upon it; but the youngest having also claimed it, they applied to a schoolmaster, one Hughes, who often acted as an attorney, for his opinion; and he, upon consulting his books, gave an opinion in favor of the youngest, on the ground, that lands could not ascend; upon which the eldest brother, rather than go to law, agreed to divide the estate, and deeds were prepared and executed accordingly: and the Lord Chancellor, King, decreed that the deeds should be delivered up and cancelled, as having been obtained by mistake, and misrepresentation. If this case be law, there can be no question of its application to the case in hand. Their analogy is so striking, as to render them almost identical; and it is worthy of remark, that although it is now more than a century since it was decided, it does not appear to have been directly overruled. It does not appear, indeed, to have been drawn into the discussion,' either in Bilbie v. Lumley, or in Brisbane v. Dacres.
The principle of it, however, seems to have been fully sustained by the Master of the Rolls, sitting for the Lord Chancellor, in Bingham v. Bingham, 1 Ves. Sen. 126. There, on a bill to have the purchase money, paid for an estate which be» longed to the plaintiff, refunded, on the ground of mistake in law, it was decided for the plaintiff with costs; “ for though” observes the Master of the Roils, “ no fraud appeared, and the defendant apprehended he had a right, yet it was a plain mistake, such as the Court was warranted to relieve against, and *652 not to suffer the defendant to run away with the money, in censideration of the sale of an estate to which he had no right.”
Besides these cases of direct authority, there is an almost endless variety of dicta of the most learned Judges, utterly irreconeileable with a different rule. Thus, in Farmer v. Arundel, 2 W. Bl. 825, Lord Ch. J. De Grey says, that “ when money is paid by one man to another, .on a mistake either of fact or of law, or by deceit,” assumpsit lies to recover it back. And so in Bize v. Dickason, 1 T. R. 286, Lord Mansfield lays down the rule broadly, that “ where money is paid under a mistake, which there is no ground to claim in conscience,” it may be recovered back in assumpsit. In short, it is difficult to turn to any book of authority, in which you will not find the principle of the rule broadly laid down, under some form or other.
In Hunt v. Rousmanier, 8 Wheat. 215, Chief Justice Marshall remarks, that “ although we do not find the naked principle, that relief may be granted on account of ignorance of law asserted in the books, we find no case in which it has been decided, that a plain and acknowledged mistake in law is beyond the reach of Equity.” And in remarking on the case of Lansdown v. Lansdown, he observes, that although objectionable in other respects; “ yet, as a case in which relief has been granted on a mistake in law, it cannot be entirely disregarded.” And, although the case of Hunt v. Rousmanier ultimately turned upon another question, see 1 Peters, 1, it shows very clearly the opiuioir of that great jurist.
Cases of this sort, and dicta supporting this view, might bo multiplied to an almost unlimited extent. That has already been done by Mr. Evans, the learned translator and editor of Pothier’s treatise on Obligations; and to his able argument I refer, as a conclusion on this difficult subject. See 2 Evans’ Pothier, App, 269.
The alternative then is presented, of following these, or the cases of Bilbie v. Lumley, and Brisbane v. Dacres. The solid foundation on which the former are based, as I have before endeavoured to demonstrate, in my judgment, greatly outweighs the narrow minded policy, on which the latter are founded; and for myself, 1 have no hesitation in coming to the conclusion, that contracts, founded on a plain and palpable mistake of the law, from a known state of facts, and capable of proof, ought not to be enforced.
*653 in considering this question, I have followed the example of the counsel on both sides, in assuming that the fact of a mistake in law, on the part of the defendant, was ascertained; and that clearly is the necessary inference from the facts ascertained by the verdict: we are not, however, at liberty.to draw any inference from a special verdict, but every fact not ascertained by it, is supposed not to exist. It is'possible, that the defendant' might have known the law, although his counsel was ignorant of it. The presumption, to be sure, is otherwise ; but the case must go back to the Circuit Court, in order that that fact may be ascertained in due form, either by special, or general verdict."
Two other questions have been raised in the course of the argument, of which, it is perhaps necessary, to take some notice. The first is, that this bond was given as the price of the compromise of a doubtful right. The second, that it was entered into for the purpose, and had the effect, of preventing a competition between the defendant, and Samuel F. Isaacs, in an application to the Legislature to release the right of escheat. It is enough to remark of both, generally, that they not only do not appear in the special verdict, but they are directly opposed to the necessary coni elusion ascertained from the facts. The defendant conceded the right of Isaacs, and his object was to buy the land ; so that neither a compromise, nor removing competition, could have entered into it.
The motion for leave to enter up judgment for the defendant is refused, and a venire de novo awarded.
Q’Neall, J. concurred.
Harper, J. having been of counsel for the defendant, gave no opinion.
JNfew trial ordered.