■Mr. Justice. Washington
 

 delivered the opinion of the Court;-— ■
 

 Thiscase waS before this Court in the year 1823, ahd-is reported in 8
 
 Wheaton,
 
 174, and was then argúed at great length,' by the counsel concerned in it. After full consideration, it. was decided, that the power of attorney, given by Rousmaniere, the intestate^ to the appellant, Hunt, authorizing him to make and execute a bill of sale of three-fourths of the TSTereus and of the Industry, to himself, or to any-other person, and in the event of their being lost, to collect the money which should become due under á policy upon them and their freight; was a naked, power, not ■ coupled with an interest, which, though irrevocable by Rousmaniere, in his lifetime,- expired on his death.
 

 That .this species of security was agreed upon, and given under a misunderstanding, by the parties, of its legal character, was conceded, in the argument-of the cause, by the bar and bench;, and the.second question, for the consideration of the Court, was, whether a Court of Equity ' could afford relief in such'a case, by.directing a,new security, .of a different character, to be given; or by decreeing that to be done, which the parties supposed - Would have been effected by -the instrument, agreed upon ?, -After an.examination of the cases, applicable to-the general question, it was stated, by the Chief Justice, who delivered the opinion of the -Court, that none of them asserted the naked principle, that relief could be granted, on the ground, of ignorance of law,- or decided, - that a plain'- and acknowledged mistake,.-'in law, was beyond the reach of a Court of Equity. The -conclusion, to which he carné, is expressed in ,the following terms»-—
 

 “, We find no case, which, we think precisely in point ; and áre unwilling,-where the effect-of the instrument is acknowledged to. have been entirely misunderstood, by both parties, to say, that a.Court of Equity is incapable of affording relief. ”
 

 
 *10
 
 . The. decree was* accordingly, reversedbut the case being-one in-which creditors. were-concerned, the Court,'instead oi giving a final- decree ;on the demurrer, in favour of the plaintiff, directed the. cause to be'remanded, that the Circuit Court might permit the defendants to withdraw their demurrer, and to answer-the bill. •
 

 After the' cause was returned to- that Court, the demurrer ■ was withdrawn, and an answer was filed, in which the defendants^ after admitting the- loans, mentioned in the bills, by the1 plaintiff to their intestate, and the notes, given for the same, by the latter, and their non-payment; assert their ignorance of any .agreement, between, the plaintiff and their-intestate, that the; former should have a- specific security, other than the powers ' of' attorney, to sell vessels and to collect the - proceeds, or, the amount, of the policies, in case they should be lost;' but'.-express their belief, that the powers of attorney were selected.by the plaintiff, in preference to the other securities, which were offered by the intestate. ' The answer further states, that the estate of Rousmaniere is greatly insolvent, and had been so before his' death; that the plaintiff had exhibited and proved-his demand, as -stated iii' his bill, before the Commissioners' of Insolvency, duly appointed, upon the estate of Rousmaniere ; and. that liis.'dividend thereon declared,' or to be declared the defendants were,' and would be ready, to pay, according, to law.
 

 The principal' deposition,, taken in the causé, is .that of Benjamin Hazard, counsellor at- law; who . deposes, that he. drew the powers of attorney, annexed to -the original bill-.'— That on the day the first power was executed, Hunt and Rous-' maniere came to his office, when the latter stated, that the former had loaned, or agreed to loan, to. him;, a., sum of money,upon security to be given by him, on his interestin.thebrig !Ne-reus, and that .he was desirous the security should be as ample and ■ available to Hunt, as it' c'ould be m'adé. That he wished, and was ready, to give a bill of sale of the property, or a mort.gage on it, or any other' security, which Mr. Hunt might prefer.- Both-the parties declared'that they had call'ed'úpoh the. witness, to request him. to draw the writings, and to obtain his opinion, as to the kind of instrument which -would give the most perfect security to the lender. That-the.deponent then .told the, parties, that a - bill 'of sale, or mortgage^' would.'be good- security, but that an. irrevocable power of ah tornev, such as was afterwards executed, would be as" effectual,and good security, as either of the others; and-Would pre-. vent 'the necessity of changing the vessel’s papers, and of Hunt’s taking possession of the'vessel, upon her arrival from sea. That the parties' then requested him to draw such an. -in
 
 *11
 
 strument, as, in his opinion, wpuld most effectually and fully secure Mr.' Hunt; • and that the plaintiff frequently asked him, whilst he viras drawing the power, and after he had finished, and read it to the parties, if he was quite certain that the power would be as ■ safe and available to him, as a bill of sale, or mortgage, and that upon his assurances that it' was, it was then executed: The witness then proceeds to express his opinion, from his knowledge of the 'parties, and from'their declaration at the time, that Rousmaniere would readily have, given an absolute bill of sale of the property, or any,other security which could have been,asked ; and that Hunt would not have accepted the one whifch was'afterwards executed, if he had not considered i't to be as-extensive'and perfect a security, in all respqct?, as an absolute bill of sale; and he adds, more positively, that such was the understanding and agreement of both the parties.
 

 It appears, by the testimony of this witness, that he drew the power of attorney, concerning the Industry, for securing the second loan made, by' the plaintiff to Rousmaniere, and that the circumstances attending, that transaction, .were essen-' tially the same as those which' have been stated, in respect to •the first-loan.
 

 We find , another deposition in-the récord, ivhich deserves tó' fie noticed, .as it consists of' declarations, made by the plaintiff, after the powers of- attorney were executed, and may serve, in some measure,to explain the more positive testimony given by Mr. Hazard. This witness, William Merchant, deposes, that, after the decease of Rousmaniere,-the plaintiff stated to him,- and to a Mr. Rhodes, that in consequence of his declining to' engage in an.enterprise in one of the vessels of Rousmaniere, to.which he had at one time consented, and of. the complaints of Rousmaniere, on that account,- he was induced to offer to Rousmaniere a loan of money. That an agreement was accordingly made, by which" he, Hunt, was to let Rousmaniere hav%a certain sú'm on,,loan', and Rousmaniere was to give him a bill‘of-sale of a certain vessel; but that afterwards, Hunt, reflecting, that if he took that security, he would have to take out papers at the custom-house', in his own name, be subject to give bonds for the vessel, and perhaps be' made liable for. breaches of law committed by- others, "he consulted with Mr. Hazard upon the subject;' who told him that he could, or would, draw- an irrevocable power of attorney, to sell -which, • would do as well, and which was accordingly done.
 

 • The. cause coming on to be heard, in.the Court below, and that Court being of-opinion, that the plaintiff had then no lien, .or specific. security upon these vessels, aiid no equity to
 
 *12
 
 have such lien or security created against the general creditors' of Rousmaniere,- dismissed the1 bill; from which decree, , the cause has been brought, by appeal', to this Court
 

 It must be admitted, that the case, as it is-now presented to the Court,' is not materially variant from that which we formerly had to consider; except in relation to the rights of the general creditors, against the insolvent estate .of a deceased debtor, in opposition to the equity which a particular creditor seeks,'by this bill, to set up. The allegations of the bills, filed in this cause, which were, on the former occasion, admitted by the demurrer to be true, are now fully proved, by the testimony taken in the cause.
 

 Before proceéding to state the general question, .to which the facts in this case give ■ rise; or the principles of equity, whieh apply to it, it will be necessary, distinctly, to ascertain, what was the real agreement concluded upon between the plain-, tiff and the intestate, the performance of- which, on the part of the latter, was intended to be secured by the powers of attorney? Was it that -Rousmaniere should, in addition to his notes for the money agreed to be loaned to him by the plaintiff, give a specific and available security on the Nereus and the Industry.'-or, was the particular kind of security selected by. the pártiei ¡, and did it constitute a part’of the agreement? It is most obvious, from the plaintiff’s own statement, in his amended bill,'As well as from the depositions appearing in the record, that the agreement was not closed, until the interview . between the parties to'it, with Mi-. Hazard, had taken place. The amended bill states,' that the specific security. which Rousmaniere offered to give, -was a mortgage of the two vessels, for which' irrevocable, powers of attorney were substituted, by the advice.of Mr; Hazard,. . and for reasons, which if would seem, were approved of and acted upon, by the plaintiff. From the testimony of Mr. Merchant, it would appear, that the • security proposed by Rousmaniere, was a bill of sale of the vessels, which the plaintiff declined accepting, for reasons of his own, uninfluenced- by any suggestions of Mr. Hazard, who merely proposed the powers of attorney as a substitute for the other forms of security .which had been offered by Rousmaniere. The difference between these statements is not -very material, since it is apparent from both of them, that the proposed security, by irrevocable powers of attorney, was selected by the plaintiff, and incorporated into the .agreement, by the assent of both the parties. The powers of attorney do not contain, nor do they profess to contain, the agreement of. the parties; but was a mere execution of that agreement, so far as it. stipulated to give to the plaintiff a specific .security on the two vessels, in the mode selected and approved of by the parties, to
 
 *13
 
 which extent, it was a complete consummation of the agreement. Such was the opinion of this Court upon the former discussion of this, cause in the year 1823, and such is its present opinion. Upon this state of the case, the general question to be decided, is the same now that it formerly was, and is that which has already been stated.
 

 There are certain principles of equity, applicable to this question, which, as general principles, we hold to be incontrovertible. The first is, that where an instrument is drawn and executed, which professes, oris intended, to carry into execution, an agreement,'whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfil, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement. The reason is obvious — The execution of agreements, fairly and legally entered into, is one of the peculiar branches of equity jurisdiction ; and ■ if the instrument which is intended-to execute the agreement, be, from, any cause, insufficient for -that purpose, the agreement remains as much unexecuted, as if one of the parties had refused, altogether, to comply , with his engagement; and a Court of Equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one ease, as well as in the other, by compelling the delinquent party fully to perform his agreement, according to the terms of it, and to the manifest intention of the parties. So, if the' mistake exist, not in the instrument,-which is intended to give effect to the agreement, but in the. agreement itself, and is clearly proved 'to have been the result of ignorance of some material fact, a Court of Equity will, in general, grant relief, according to the nature of the particular case in which it is. sought. Whether these principles, or either, of them, apply to the present > case, must, of course, depend upon the. real character of the agreement under , consideration- If it has .been correctly stated, it follows, that,the instrument, by means of which the .specific security was tobe given, was selected by the parties to the agreement, or rather by the plaintiff; Rous-maniere having proposed' to give a mortgage, or bill of sale of the vessels, which the plaintiff, after consideration, and advice of counsel, thought- proper to reject, for reasons which were entirely satisfactory to himself. That the .form-of the instrument, so chosen by the. plaintiff,, and prepared, by the person who drew it,' conforms, in' every respect, to the one agreed upon, is not even asserted in the bill, or in the, argument of counsel.. The avowed object of the plaintiff was, to obtain a valid. security, but in. such a.manner, as that the legal interest in the property should'remain with Rousma-’
 
 *14
 
 tiiere, so that the plaintiff might be under no necessity to take óút pápers at the custom-house, in his own name, and might not be subject to give bonds for the vessels, or to liabilities for breaches of law, committed by those who were intrusted with the management of them. That the general intention of the parties was, to provide a security, as • effectual as a mortgage of .the vessels would be, can admit óf no doubt; and if such had been their agreement, the insufficiency of the instruments, to 'effect that object, which., were afterwards prepared, would have furnished a ground for the interposition of a Court of Equity; which the
 
 representatives
 
 of Rousmaniere could not easily have resisted.. But the plaintiff was not satisfied to leave the .kind of security which he was willing to receive, undetermined; haying finally made up his mind, by the advice of his counsel, not to accept of a mortgage, or bill of sale, in nature of a mortgage. He thought it safest, therefore, to designate the instrument; and,'having deliberately done So, it met the view of both, parties,, and was .as completely incorporated into their agreement, as were the notes of hand for the sum intended to be secured. In coming to, this determination, it is not pretended that the plaintiff was misled by ignorance of any fact, connected with the agreement which he was about to conclude. If, then, the agreement was not found-, ed in a mistake of any material fact, and if it was executed in strict conformity with itself; we think it would be unpre- ' cedented, for a Court of Equity to decree another security to be given, not only different.from that which had been agreed upon,' but one which had been deliberately considered and rejected by the party now asking for relief; or to treat the case, as if such other security had in fact been agreed upon and executed. Had Rousmaniere, after receiving the money agreed to be loaned ,to him, refused to give an irrevocable power of attorney, but offered to execute a, mortgage of the vessels, no Court of Equity could have compelled the plaintiff to accept the security so offered. Or, if he .had totally refused to execute the agreement, and the plaintiff had filed his bill, praying that the defendant might be compelled to, execute a mortgage.,ins.tead
 
 of
 
 an irrevocable power of attorney ; could that Court have granted the relief specifically asked for? We think not. Equity may compel parties to perform their agreements; when fairly entered into, according m their terms; but it has no power to make agreements for parties, and then compel them to. execute the same. The former is a legitimate branch of its .jurisdiction, and in its exercise, is highly beneficial to society. The latter is without its authority, and the exercise of it would be not- only an usurpation of power, but would- be' highly mischievous in its. consequences.
 

 
 *15
 
 If the Court could not have compelled the plaintiff to accept, ■ or Rousmaniere to execute, any other instrument, than the one which had'.been agreed upon between them, the case is in no respect altered by the death of the latter, and the consequent inefficiency of the particular security which 'had been selected; the objection to the relief asked for, being in both cases the same, namely, that the Court can only enforce the performance of an agreement according to its terms, and to the intention of the parties; and cannot force upon them a different .agreement That the intention of the parties, to this agreement, was'frustrated, by the happening of an event, not thought of, probably, by them, or by the counsel who was consulted upon the' occasion, is manifest. The kind of security which was chosen, would have been equally effectual, for the purpose intended, with a mortgage, had Rousmaniere. lived until the power had been executed; and it may therefore admit of some doubt, at least, whether the loss of the intended security is to be attributed to a want of foresight, in the parties, or to a mistake, of the counsel, in respect to" a matter of law. The case will, however, be considered in the latter.point of view.
 

 The question', ‘then, is, ought the Court, to grant the relief which is asked for, upon the ground of mistake arising frortr any ignorance of law ? We hold the general rule to be, that a mistake of this character is not a ground for reforming a deed founded on such mistake; and whatever exceptions there may be to this rule, they are not only few in number, but they will be found to have something peculiar in their characters.
 

 The strongest case which was cited and relied upon by the appellant’s counsel, was that of Landsdown
 
 vs.
 
 Landsdown, reported in
 
 Mosely.
 
 ' Admitting, for the present, the authority of -this case, it is most apparent, from the face of it, that the-decision of the Court might well be supported upon a principle not involved in the question we are examining. The subject which the Court had to decide, arose out of a.dispute between an heir at law, and a younger member of the family, who was entitled to an estate descended; and this, question, the parties agreed to submit to arbitration. The award being against the heir at law,' he executed a deed in compliance with it, but was relieved against it on the rinciple that he was ignorant of his title. '
 

 If the decision of the Court proceeded upon the ground that the plaintiff was ignorant of the fact that he was the eldest son. it was clearly á case proper for relief, upon a principle which has already been considered.
 

 If the mistake was of 'his legal rights, as ’heir at law, it is not' going too far to presume, that the opinion of'the Court-
 
 *16
 
 • may have been founded upion the belief, that the heir at law was imposed upon by some unfair representations of his better in-’ formed opponent; or that his ignorance óf a legal principle,' so universally understood by all, where the right of primogeniture forms a part' of the law of descents, demonstrated a degree of'-'mental imbecility; which might well entitle him to relief. He acted, besides, under , the pressure .of an award, which was'manifestly repugnant to- law, -and for aught that is stated in this case; this may have appeared upon the face of it.
 

 But if this case must be considered as an exception from the generáí rule which has been mentioned; the circumstances attending 'it, do not- entitle' it, were i^- otherwise unobjectionable, jo be respected, as an authority, but in casés which it closely ¡'resembles. -There is a cCss of-cases which'it 'has-been!' supposed forms an exception from this general rule, but which'' will, be found, upon, examination, to come within the one whiq*' whs first stated.-' The cases alluded to, are those in which equity has afforded relief against the representatives of a deceased obligor, ip a joint bond, given for money, lent to.both the obligors, although such representatives were discharged ■ át- law. The principle«.upon which these cases manifestly proceed, is,, that the money being • leiit to both, the law raises' a promise in both to pay, and equity considers the security of the. bond as "being intended, by the parties,, to be co-extensive with this implied- Contract by both to- pay the debt.. To effect this intention, the bond should have been made joint and •several;.and the mistake in the form, by-which, it is made joint, is not in the agreement of the parties, but in the execution of it by .the draftsman.. The cases in which the general rule; has been adhered to, are, many of them, of, a character which strongly test the principle upon which the rule itself is founded. Two or three.only need be referred to. If the obligee, in a. joint bond, by two. or more, agree with one of the obligors, to relieve‘him. from, his obligation, and does .accordingly execute a release, by. w nich all the obligors are discharged at law, 'equity'will not afford'relief against this legal. conse- ' quence, although, the release was given Under a manifest misapprehension of the. legal' effect of it;-in relation to the other obligors. - So, in the case of Worral vs. Jacob, 3
 
 Merv. 27
 
 1, where'a person having.a power of'appointment and -revocation, and, under á mistaken supposition, that a deéd might be -. altered .or revokedjValthough ño power of revocation had been ¡. reserved, executed the power of appointment without, reserving a power of revocation; the Court refused to relieve against the mistake.
 

 The case of Lord Irnham
 
 vs.
 
 Child,
 
 1 Bro. C. C.
 
 92, is a very strong one in support of the general rule, and closely
 
 *17
 
 resembles tne present, in most of the material- circumstances attending it. The object of the suit was to set up á clause containing'a power of redemption, in a deed granting an'annuity,
 

 which, it was said, .had been agreed upon by the parties, but which, after deliberation, was excluded by consent* from a mistaken opinion, that it would render the contracts usurious. The Court, notwithstanding the omission manifestly proceeded upon a misapprehension of the parties as to the law, refused to relieve by establishing the rejected clause. It is not the intention of the Court, in the case now under consideration, to lay it down, that there may not be cases in which a Court of Equity will relieve against a plain mistake, arising from ignorance of law. But we .mean to say, that where the parties, upon deliberation and advice, reject one species of security, and agree to ■ select another, under a misapprehension of the law as to the .nature of the security so selected, a Court of Equity will not, on the ground of such misapprehension, and the insufficiency of such security, in consequence of a subsequent- event, not foreseen, perhaps, or thought of, direct a new security, of a different character, to be given, or decree that to be done which the "parties supposed would .have been effected, by the instrument which was finally agreed upon.
 

 If the Court would not interfere in such a case, generally, much less would it do so in favour of one creditor, • against the general creditors of an insolvent estate, whos~ equity is, at least, equal to that of the party seeking to obtain a preference, and who, in point of law, stand upon the same ground with himself. This is not a bill asking for a specific performance of an agreement to execute a valid deed for securing a debt-; in which case, the party asking relief, would be entitled to a specific lien; and'the Court would' consider the debtor as a trustee, for the creditor of the' property on which the security was agreed to be given. 1 The agreement- has been fully executed, and' the only complaint is, that the agreement itself was founded upon a misapprehension of the law, and the prayer is to be relieved against the consequences of such mistake.' If all other difficulties were out of the way, the equity.of the general creditors to be paid their debts, equally with the plaintiff’, would, we think, be sufficient to induce the Court to leave the parties where the law has placed them.
 

 The decree is to be affirmed* with costs.