Champlin v. Laytin.

---

CHAMPLIN and others, executors of Depeyster, *appellants*, and LAYTIN, [407] *respondent.*

Courts of equity may grant relief against acts done and contracts executed *under a mistake of facts.*

Where relief is granted in such cases, *it seems*, it is extended as well to the *refunding of money* paid under the contract, as to the *annulling of the contract.*

Whether relief will be granted where there is mere *mistake of law*, quere.

Whether there be a distinction between *mistake of law* and *ignorance of law*, so that relief may be granted in the former case, when it would not be granted in the latter, quere.

The rule, that a purchaser is in equity chargeable with *constructive notice* of the contents of a deed, which came to the knowledge of his agent in the investigation of the title, does not apply as between the vendor and the purchaser; it applies only as between the purshaser and third persons having prior equitable rights.

APPEAL from chancery.   The appellants filed a bill in chancery for the *foreclosure* of two mortgages executed by the respondent, who filed a cross-bill, praying that the mortgages might be cancelled and delivered up, and the appellants be directed to *refund* the moneys paid by him on the purchase of the lots specified in the mortgages.   It appeared that in January, 1828, the appellants sold to the respondent two lots in the city of New-York, occupying the site of *Fifth street*, as laid down on the city map made in 1817, *which was not then opened*, but which subsequent to the sale to the respondent was opened as a street, and only the sum of *five dollars* awarded to the respondent as damages, in consequence of the street having been constructively *dedicated to the public use*, by virtue of its having been recognized by the appellants *as a street*, in a conveyance made by them of a lot in the same tract to one *Whittemore*, in January, 1822.   The respondent charged. that not until long after the execution of the deeds to him for the lots purchased by him, had he any *knowledge or notice that the appellants had*

Champlin v. Laytin.

*done any act whereby to charge or encumber the premises.* Other facts apper[408] taining to the case will be found in the opinion delivered in this court. The cause was heard before the vice-chancellor of the first circuit, who dismissed the bill of the appellants with costs, and granted the prayer of the respondent's bill. The chancellor, on appeal to him, affirmed the decree of the vice-chancellor. See the opinion of the chancellor and vice-chancellor in 6 *Paige,* 189, *et seq.* An appeal was thereupon taken to this court.

The cause was argued here by

H. W. *Warner & B. F. Butler,* (attorney-general of the U. S.,) for the appellants.

M. *Hoffman & F. B. Cutting,* for the respondent.

*Points for the appellants:*

I. Contracts are not to be rescinded but in the clearest cases and on the strongest evidence, especially when they have been executed.

II. In regard to real estate especially, purchasers must in general look to their covenants, and cannot be relieved on the ground of failure or defect of title. (*Chesterman* v. *Gardner,* 5 *Johns. Ch. R.* 29. *Gouverneur* v. *Elmendorf, id.* 79.)

III. Want of notice, though in proper cases a good defence, cannot be set up as a ground of relief, and the respondent's bill should therefore have been dismissed. At all events, the relief ought in no view to be extended beyond the mortgages. (*Frost* v. *Beekman,* 18 *Johns. R.* 544.)

IV. The respondent purchased deliberately and with full knowledge of facts; and having taken his deed, entered into possession, and exercised acts of ownership for nearly two years, he is too late with his objection. (*Sugden,* 9. *Fludyer* v. *Cocker,* 12 *Vesey,* 27. *Burwell* v. *Brown,* 1 *Jac. & Walk.* 169. *Ward* v. *Jeffrey,* 4 *Price,* 294. *Royster* v. *Shackleford,* 5 *Little,* 229.)

V. The cross-bill is not framed for relief on the ground of a mistake of law; and there is no proper evidence of such mistake.

VI. Mistake of law is not a ground for relief. (*Hart* v. *Rousmaniere,* 2 *Mason,* 244. 1 *Peters,* 1, *and cases there referred to. Wheaton* v. *Wheaton,* 9 *Conn. R.* 96.)

[409]          VII. The respondent was under no mistake when he purchased, in reference to the law as then understood and in force.

VIII. An executed contract, good at the time it is made, can never be rescinded in equity on account of a subsequent alteration of the rules of law relative to its subject.

*Points for the respondent:*

I. Supposing every fact relating to the property had been as fully known to the respondent as to the appellants, the respondent is entitled to the relief decreed below, on the ground of a mutual mistake of the law. (*Opinion of the vice-chancellor and of the chancellor in this case. Hitchcock* v. *Giddings,* 4 *Price,* 135. *Willan* v. *Willan,* 16 *Vesey,* 73. *Bingham* v. *Bingham,* 1 *Vesey, sen.,* 126. *Bell's Supp.* 79. *Lansdown* v. *Lansdown, Mosely,* 364. *Pusey* v. *Desbourne,* 3 *P. Wms.* 320. *Evans* v. *Llewellyn,* 2 *Bro. Ch. R.* 150. *Edwards* v. *McLeary, Cooper,* 307. *Leonard* v. *Leonard,* 2 *Bell & Beatty,* 184, *n. a.* 2 *Evans' Pothier,* 369, *ed. of* 1806. *Hunt* v. *Rousmaniere,* 8 *Wheaton,* 205, *S. C.* 1 *Peters' U. S. R.* 13. *Mead* v. *Johnson,* 3 *Conn. R.* 592. *Lowndes* v. *Chisolm,* 2 *McCord's Ch. R.* 455. *Lawrence* v. *Beaubien,* 2 *Bailey's S. C. R.* 623. *Hopkins' Exec.* v. *Mazyck,* 1 *Hill's Ch. Cas.* 250. *Fitzgerald* v. *Peek,* 4 *Little,* 127. *Glassell* v. *Thomas,* 3 *Leigh.* 113. *Rowlin* v. *Pollock,* 7 *Monroe,* 33. *Drew* v. *Clark, Cook's R.* 374.)

II. The respondent was actually ignorant of those facts, viz.: the acts of the executors, by which they had rendered themselves unable to give him a beneficial interest in the property. The respondent is not chargeable with constructive notice of such facts. And further, the statements of Mr. Herring, one of the executors, amounted to a misrepresentation in point of fact. The re-

Champlin v. Laytin.

spondent is entitled to the relief given below, in any aspect of the case, whether it is concluded, 1. That he was merely ignorant of the facts which had occurred, and mistook his contract; or, 2. That such facts had been wilfully or through error, concealed by the executors; or, 3. That there had been a misrepresentation in point of fact on the part of the executors, whether fraudu- [410] lent or otherwise. (Cases as to ignorance, mistake or misapprehension : *Robinson* v. *Dickenson*, 3 *Russell*, 399 ; *Story on Equity*, 155, 6, et seq.; *Gillespie* v. *Moon*, 2 *Johns. Ch. R.* 585 ; *Wilkins* v. *Woodfin*, 5 *Munf.* 183; *Armstrong* v. *Hickman*, 6 *id.* 287 ; *Chamberlain* v. *Marsh*, *id.* 283 ; *Burrall* v. *Jewett*, 2 *Paige*, 146. Cases upon misrepresentation, whether fraudulent or not: *Woods* v. *Hall*, *Dev. Eq. R.* 411 ; *Waters* v. *Mattingley*, 1 *Bibb*, 244; *Robinson* v. *Gilbeth*, 4 *id.* 183 ; *Thomas* v. *Todd*, 3 *Litt.* 337 ; *Carr* v. *Callaghan*, *id.* 366.)

III. Laytin has no remedy at law, or at all events, the remedy is doubtful and inadequate ; and even if clear, the objection was made too late. The incumbrance, and the amount thereof, having been judicially ascertained, this court can grant relief for the breach of the covenants in the deed. This court has jurisdiction, and the appellants have submitted to it. (Cases as to the breach of the covenants in the deed: *Jones* v. *Gardner*, 10 *Johns. R.* 269 ; *Kellogg* v. *Ingersoll*, 2 *Mass. R.* 97 ; *Prescott* v. *Trueman*, 4 *id.* 627. Cases to show that there is no remedy at law, or it is insufficient and doubtful : *Kane* v. *Sanger*, 14 *Johns. R.* 89 ; *Hitchcock* v. *Harrington*, 6 *id.* 290. Cases upon the point that the objection is too late: *Grandin* v. *Le Roy*, 2 *Paige*, 509 ; *Hawley* v. *Cramer*, 4 *Cowen*, 727. Cases upon the question of jurisdiction: *Abbot* v. *Allen*, 2 *Johns. Ch. R.* 521; *Johnson* v. *Gere*, 2 *Johns. Ch. R.* 547 ; *Edwards* v. *McLeary*, *Cooper*, 307 ; *Mead* v. *Johnson*, 3 *Conn. R.* 592; *Prescott* v. *Trueman*, 4 *Mass. R.* 630 ; *Kellogg* v. *Ingersoll*, 2 *id.* 97 ; *Frisbee* v. *Hoffnagle*, 11 *Johns. R.* 50.)

After advisement, the following opinions were delivered :

By Justice BRONSON. *Fifth street*, running from Broadway to Mercer street through lands owned by the testatrix, *Elizabeth Depeyster*, was laid down on a map made for the corporation of the city of New-York in the year 1817. In 1821, the appellants caused a map of the lands of the testatrix to be made, on which Fifth st. was laid down to correspond with the city map. They afterwards made sales in pursuance of this survey, and in January, 1822, they sold and convey- [411] ed a lot to *Samuel Whittemore*, extending from Broadway to Mercer street, and which, by the terms of the deed, was bounded on one side for the whole distance by Fifth street. According to the decision in the case of *Mercer street*, (4 *Cowen*, 542,) this did not amount to an implied grant of a right of way to the purchaser over the proposed street, but the appellants, when the street should be opened, would be entitled to be paid the full value of the land, without regard to the supposed easement. This case was decided in 1825. The appellants, acting on the belief that the sale to Whittemore had not affected their interest in the land required for the proposed street, surveyed the same into lots, and in January, 1828, sold and conveyed to the respondent the two lots which are the subject of controversy in this suit. In the case of *Lewis street*, (2 *Wendell*, 472,) decided in 1829, the case of *Mercer street* was reconsidered and overruled ; and the principle of the last decision has been approved by this court in *Livingston* v. *The Mayor of New-York*, (8 *Wendell*, 85,) and in *Wyman* v. *The Mayor of New-York*, (11 *id.* 486.) After the decision in the case of *Lewis street*, the corporation of the city ordered Fifth street to be opened, and the respondent has only been allowed a nominal consideration for his two lots, on the ground that the previous acts of the appellants in selling and bounding lots on the street, amounted to the grant of a perpetual easement or right of way over the land. Before the conveyance to the respondent was executed, he was informed that the two lots lay in the site of the proposed street. Both parties entertained the belief that the respondent would acquire a perfect title to the lots, and should the street be opened, that he would be entitled to receive full compensation for the land, without prejudice from any

217

Champlin *v.* Laytin.

previous act of the appellants. In that, the parties were mistaken; and this has led to the discussion of the question, whether the respondent was entitled to relief on the ground of a mistake in matter of law. The vice-chancellor was of opinion that equitable relief might be granted on that ground, and has [412] decreed it accordingly The chancellor has affirmed the decree, but for a different reason.

There is nothing in the point made by the respondent, that the court below was authorized to grant relief on the ground of a breach of the covenant in the deed. If there has been any breach, the remedy of the respondent was by action at law to recover damages; not by bill in equity.

Courts of equity may grant relief against acts done and contracts executed under a mistake, or in ignorance of material facts; but it is otherwise, I think, where a party wishes to avoid his act or deed, on the ground that he was ignorant of the *law.* All men are presumed to know the law of the land; and although the presumption may often be at variance with the fact, it is impossible, without indulging it, to maintain the order or the institutions of society. The maxim, *ignorantia legis non excusat,* is uniformly applied in the administration of criminal laws, and I am at a loss to conceive why the fitness of the rule should ever have been doubted in civil cases. It surely cannot be more important to protect men in the enjoyment of their estates, than it is to save them from ignominious punishments; and yet there are some few cases in the books which either directly favor the opinion, that relief may be granted on the ground of ignorance or mistake in matter of law, or where the courts have been so solicitous to reach what has been deemed the equity of a particular case, that they have proceeded upon distinctions too subtle for practical utility. The landmarks of the law should be drawn in striking characters. It is better that a general rule should be denied at once, than to admit its existence, and multiply exceptions until its practical influence is no longer felt. The common law does not profess to give the best rule for every possible case that may arise; but only such general rules as have, from long experience, been found on the whole best adapted to the wants and well-being of society. Questions will sometimes arise where the principles of the common law will come short of administering what may seem the most obvious equity; but it is better that the hardship of a particular case should be endured, than to think of multiplying [413] legal regulations, until they shall become as infinitely diversified as are the affairs of men. I am persuaded that more mischief has been done by attempting to mould the law to what has seemed the natural justice of a particular case, than could have resulted from a steady and firm adherence to those general principles which lie at the foundation of our jurisprudence.

The rule, that every man who has a full knowledge of the facts is presumed to understand his legal rights, is as much respected in courts of equity as it is at law. (*Viner's Abr., tit. Chancery, N. Comyn's Dig., tit. Chancery, 3, F. 8. Hunt v. Rousmaniere, 1 Peters, 1. Shotwell v. Murray, 1 Johns. Ch. R. 512. Lyon v. Richmond, 2 id. 51. Storrs v. Baker, 6 id. 166. 1 Mad. Ch. 73. 1 Story on Equity, 121.*)

Without intending a general review of the cases on this subject, I shall notice some of those which are supposed to have the most important bearing in favor of the respondent. In *Lansdown v. Lansdown,* (*Mosely,* 364,) the second of four brothers died, and the eldest and the youngest both claimed his estate. They referred the question to a school-master, who decided that the youngest was entitled to the property, because lands could not ascend. Upon this the parties agreed to divide the estate between them, and the eldest brother executed a release. The chancellor decreed that the deed should be delivered up, " being obtained by mistake and misrepresentation." The facts are so briefly stated, that it is impossible to say with certainty on what ground the decision proceeded. If there was any intentional misrepresentation, either about the facts or the law of the case, that

Champlin v. Laytin.

would be a proper ground for affording relief; and it is stated in a report of the case, (2 *Jac. & Walk.* 205,) that the complainant alleged in his bill that he had been surprised and imposed upon by his brother and the school-master. In the report by *Mosely*, Lord Chancellor King is made to say that the maxim of law, *ignorantia juris non excusat*, was in regard to the public; that ignorance cannot be pleaded in excuse of crimes, but did not hold in civil cases. *Mosely* is not a book of very high authority, (5 *Burr.* 2629; 3 *Anstr.* 861;) and I think it much more probable that the case turned on the ground of surprise and im- [414] position, than that the chancellor made use of the language imputed to him. Chief Justice *Marshall* cited this case in *Hunt* v. *Rousmanie*, when first before the court, (8 *Wheaton*, 214,) with the qualifying remark, " if it be law ;" and he added, that there were certainly strong objections to the decision. Mr. Justice Story, in commenting on the language imputed to Lord Ch. King, says it is utterly irreconcilable with the well-established doctrine, both of courts of law and courts of equity. He adds, the general rule certainly is, that a mistake of the law is not a ground for reforming a deed founded on such mistake ; and whatever exceptions there may be to this rule, they are not only few in number, but they will be found to have something peculiar in their character, and to involve other elements of decision. (1 *Story's Eq.* 129.)

The case of *Brigham* v. *Brigham*, (1 *Vesey*, sen., 126, and *Bell's Supp.* 79,) is supposed to have an important bearing on the question. The plaintiff had purchased an estate which already belonged to him, and it was decreed that the defendant should refund the purchase money. This is the substance of the case as stated by *Vesey*. Mr. *Bell* adds, the bill stated that the plaintiff was persuaded by the defendant and his scrivener and conveyancer, that Daniel had no power to make the devise on which the title of the plaintiff depended. To this the defendant responded, that the plaintiff should have been better advised before he parted with his money. If active means were employed by the defendant to mislead the plaintiff in relation to his legal rights, that may have furnished a very proper ground for granting relief. After the defendant had employed a scrivener and conveyancer to persuade the plaintiff that he had no title, it certainly was not a very good answer to tell the plaintiff he had confided too credulously in their representation, and should have been better advised before he parted with his money. On whatever ground the case may have turned, it does not appear that Lord Hardwicke thought he could grant relief, merely on the ground that the party had mistaken the law of the land. As to the case of *Willan* v. *Willan*, (16 *Vesey*, 72,) it is only necessary to read the depositions of Dr. [415] Kirkland, the physician, and Mrs. Willan, the widow of the testator, to show that there were very good grounds for interfering in that case, without touching the principle that every man, in the full enjoyment of his mental faculties, and in the absence of all undue influence, is presumed to know the law of the land.

In *Pusey* v. *Desbourne*, (3 *P. Wms.* 315,) the daughter made her election to take the legacy in ignorance of the fact how much her orphanage portion would amount to; and besides, the case was never finally decided, but was agreed between the parties, as appears from the register's book. The case of *Edwards* v. *McLeary*, (*Coop. Ch. Cas.* 308,) was decided on the ground of fraud. *Evans* v. *Llewellyn*, (2 *Bro. Ch.* 150, more fully reported in 1 *Cox's Ch. Cas.* 333,) will be found to rest on peculiar grounds, not affecting the question under consideration.

I do not think it necessary to mention other cases cited on the argument, which have a less important bearing in favor of the respondent than those already considered. Unless the case in *Mosely* is an exception, I think there is no one in the English books which affirms the doctrine that mere mistake in matter of law, in the absence of all fraud, surprise, circumvention, and undue influence, furnishes a sufficient ground for setting aside a contract, or otherwise relieving a party from the legal consequences of his acts.

Champlin *v.* Laytin.

The civilians are divided on the question, whether money paid under a mistake of law is liable to *repetition.* But it is the settled doctrine of Westminster Hall that money paid, with a full knowledge of the facts, cannot be recovered back on the ground that the party was ignorant of the law. (*Bil'ie* v *Lumley,* 2 *East,* 469 ; *Lowrey* v. *Bourdieu, Doug.* 467, *per Buller, J. ; Stevens* v. *Lynch,* 12 *East,* 38 ; *Brisbane* v. *Dacres,* 5 *Taunton,* 144.) Such also is the rule in this state. ( *Clark* v. *Dutcher,* 9 *Cowen,* 674.)

In *Fitzgerald* v. *Peek,* (4 *Litt. Ky. R.* 125,) it was said that even for mistakes of law, relief may be granted in some cases. The same doctrine was asserted in *Lowndes* v. *Chisolm,* (2 *M'Cord's S. Car: R.* 455.) *Lawrence* v. *Beau-* [416] *bien,* (2 *Bailey's S. Car. R.* 623,) is the only case I have met with where a distinction was attempted between *ignorance* and *mistake* of the law, and holding that in the latter case, though not in the former, relief might be granted. I think the distinction rests on no solid foundation. Whether money paid in ignorance of the law could be recovered back, was elaborately discussed by the counsel in *Haven* v. *Foster,* (9 *Pick.* 112 ;) but the decision turned upon another point. The court, however, assert the principle, as applicable alike to civil and criminal proceedings, that every man is presumed to know the law of the land. *Wheaton* v. *Wheaton,* (9 *Conn. R.* 96,) and *Hunt* v. *Rousmaniere,* (1 *Peters,* 1,) both affirm the doctrine that a party cannot be relieved on the ground of mistake in matter of law.

The principles of the common law have been followed more closely in this than they have in some of the other states; and our courts have never held but one language on this question. In *Shotwell* v *Murray,* (1 *Johns. Ch. R.* 512,) the chancellor said it was a settled principle of law and sound policy, that a person cannot be permitted to disavow or avoid the operation of an agreement entered into with a full knowledge of the facts, on the ground of ignorance of the legal consequences which flow from those facts. He added, that ignorance of the law was a very dangerous plea, whether we apply it to the rules of civil conduct, or to duties of natural and moral obligation. And he denied relief, on the ground that the plaintiff was only under a mistake in point of law, which mistake was not produced by any fraud in the defendant. *Lyon* v. *Richmond,* (2 *Johns. Ch. R.* 51,) is another direct decision on the point. The chancellor says, courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind. He adverts to a feature in that case much like the one which has given rise to this controversy, and remarks, that to permit a subsequent judicial decision in any one given case on a point of law, to open or annul everything that has been done in [417] other cases of the like kind for years before, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society, there is no such precedent to be found. This case was reversed in error, (14 *Johns. R.* 501,) but it was on grounds which left the principle laid down by the chancellor untouched. In *Storrs* v. *Barker,* (6 *Johns. Ch. R.* 166,) the same doctrine was again asserted ; and in *Clark* v. *Dutcher,* (9 *Cowen,* 674,) the question whether money paid under a mistake of law, but with full knowledge of the facts, could be recovered back, was very fully considered by the supreme court, and decided in the negative.

It is impossible to foresee all the consequences which would result from allowing men to avoid their acts and annul their contracts, on the plea that they did not understand the law. Who can tell what titles would stand, or. what contracts could be enforced, if grantors and obligors were at liberty to set up this plea ? Who would venture to enter into stipulations with another, if, after having dealt fairly in relation to the facts of the case, the validity of the contract still depended on the legal knowledge of the opposite party ? And what possible reason can

Champlin v. Laytin.

there be for indulging the plea of ignorance in civil cases, when it is wholly dis-regarded in criminal trials where liberty and life itself are at stake ? Should we sanction this doctrine under the notion of administering equity in a hard case, it could not, I think, fail to open the floodgates of litigation, and work the most mis-chievous consequences in the administration of justice.

Having arrived at the conclusion that the respondent was not entitled to relief on the grounds of a mistake of the law, it becomes necessary to inquire a little more particularly into the facts of the case. I have said already that both parties acted under the influence of a mistake; but what was the nature of the error under which they respectively acted, remains to be more fully considered. It is not denied that the appellants were as fully informed at the time of the sale of every material fact connected with the origin of this controversy as they are at the present moment. They knew of the city map made in 1817, and their own map under which sales were made in 1822. They knew also that they had conveyed land to Whittemore, bounding him on Fifth street, for [418] the whole distance from Broadway to Mercer street. With the knowledge of all these facts, they say, and I doubt not say truly, that they believed they had done no act affecting their beneficial interest in the land over which Fifth street was laid, and should the street be opened, they supposed the purchaser would be entitled to full compensation for the land. They erred in drawing the proper legal conclusion from facts within their knowledge—they mistook the law.

What was the error of the respondent, Laytin ? Mr. Herring was the active executor, and transacted the whole business on the part of the appellants. He attended and directed the sale, and made all the representations in relation to the title and circumstances of the property. He admits that he stated his opinion to Laytin that the title was perfect, that the appellants were seized of the lots in fee, clear of all incumbrances and charges, and that the lots could not be taken for the purpose of opening the street, without allowing the full value of the land. He told Mr. Fitch, the counsel of Laytin, that if the street was ever opened, Laytin would be paid for it by the corporation. Wyman swears that Herring, at the time of the sale, represented that the title was perfect, and free from incum-brance. Moses, who also purchased at the same time, swears that Herring told him it was useless to employ counsel to examine the title—that he had himself examined, and the title was perfectly good—that there was no incumbrance what-ever upon the land. How would these representations be understood by a per-son unacquainted with the facts ? How would the purchaser have a right to under-stand them ? So far as related to the seizin of the testatrix, the representations ought perhaps to have been regarded as the mere expression of an opinion con-cerning the validity of the title ; but in relation to the acts of the appellants them-selves, the representations would most obviously be understood not as matter of opinion merely, but as an affirmation that they had done no act which could prejudice the purchaser in the beneficial enjoyment of the property. The represen-tation that the lots could not be taken by the corporation for the purpose [419] of opening the street, without paying full value for the land, whatever other idea was included in it, would naturally be understood by the purchaser as an as-surance that the appellants had not themselves done any act which would pre-clude him from demanding full compensation. To this extent, at least, Laytin had a right to understand Herring as speaking of the facts of the case. Herring did not state what the facts were, and then declare his opinion on the matter of law. Had he done so, the parties would then have stood on equal terms, and must have abided the consequences of their mutual error.

If I am right in this view of the case, it follows that the mistake under which Laytin entered into the contract, was one of fact, and not of law. He did not err in drawing legal conclusions from facts within his knowledge, and is not driven to that ground in seeking relief. He trusted to representations which he

221

Champlin *v.* Laytin.

had a right to understand as relating to the facts of the case, and which, though innocently made, have turned out to be false and deceptive.

But it is said that the respondent, before the conveyances were executed, had notice of all the material facts. If this be true, he is now too late in asking relief, and must abide the consequences of his own misjudgment. But the allegation of notice is not, I think, well founded. At the time the respondent bid off the lots he knew nothing about the street; but before the conveyances were executed, he saw the map of 1821, and knew that the lots were in the site of the proposed street. So far as that fact goes, he acted with his eyes open, and cannot now complain. But did he know of the deed to Whittemore, and its contents? It was of little moment that the appellants had made a map, laying down a street over their land. That would not authorize the corporation of the city to take the land without paying its full value. The owners might abandon their map at pleasure, and sell or build on the land in the same manner as though nothing had been done; but after they had made sales in reference to the map, and in terms bounded the purchaser on the street, they had created a [420] servitude in the land, and were then too late to abandon the map. On opening the street they were only entitled to a nominal compensation— their whole beneficial interest in the land was at an end. The fact that they had sold lots in reference to the proposed street, was in the highest degree important to the respondent. He had a right to that information, that he might judge for himself, or consult counsel, in relation to the legal consequences of such an act.

Had the respondent notice of the Whittemore deed, and its contents? The appellants in their answer do not allege that they gave him any information concerning it. The answer only states that the appellants have reason to believe, and do believe, that the respondent had notice of the deed. They give the reason for this belief, and say they are informed, and expect to prove, that Fitch, the respondent's counsel, made an abstract of the title, in which the Whittemore deed was conspicuously noted. There is no pretense in the answer that the respondent came to the knowledge of the deed or its contents in any other way. How then does this question stand on the testimony of Mr. Fitch? When first called, he had mislaid his papers, and said nothing about the abstract. On a second examination, he says, that in the register's certificate annexed to his notes of searches, the Whittemore deed is mentioned, and he gives a copy of the short note made by the register, in which the lot was described as " No. 7, De peyster's map." He adds, that he does not remember examining the deeds—he thinks it very doubtful whether he did, for he saw that number on the map, and it was not the property he was searching for. He says further, that he has no recollection of having examined the records of any of the deeds referred to by the register. He thinks he did not. It is impossible on the testimony of Mr. Fitch to say that he examined the deed or the record of it. He learned that the appellants had conveyed a lot to Whittemore, but as it was not the land which had been sold to his client, he did not take the trouble to look into the deed to see what collateral matters it might contain. The fact did not come to his knowledge, that by the terms of the conveyance, Whittemore was bounded on [421] the street. It is true that on looking at the Depeyster map he would see that lot number seven lay adjoining the street; but that would not be likely to awaken his attention to the legal consequences which might follow, as would the knowledge of the fact that the appellants had by their deed solemnly recognized the street. The appellants withheld important information from the purchaser, and made representations on which he had a right to repose—they used language which he could not but regard as an assurance that they had done no act which could affect his beneficial interest in the property—none which could prejudice his claim to full compensation for the land, should the street be

Champlin *v.* Laytin.

opened. In such a case they should be held to strict proof on the question of notice.

This is not a case for applying the doctrine of constructive notice. As between the purchaser of an estate and a third person claiming an equitable interest in the property, the purchaser may, under certain circumstances, be charged with implied notice of the contents of a deed, whether he examined it or not; and he may also be chargeable with notice of a fact which came to the knowledge of his attorney or agent for making the purchase. But the Whittemore deed was not one of the links in the chain of title which Laytin was investigating, and I do not see how any one could charge him with constructive notice of its contents. But it clearly does not lie with the appellants to set up this doctrine. After withholding important information within their knowledge, and making representations directly calculated to mislead the party with whom they were contracting, the least that can be required of them is, to make out actual notice.

This then is a case where the parties have bargained under a mutual mistake, going to the essence of the contract. The error of the appellants was one of law; but the mistake of the party seeking relief was in a matter of fact. He had no knowledge of an act done by the other party, which had destroyed the whole value of the property. He purchased under a misrepresentation, which, however innocently made, operated as a fraud upon him. It is against conscience for those who led him into the error to insist on the fruits of [422] the contract. Actual fraud is not necessary in such a case to entitle the party to relief in a court of equity. (*Leonard* v. *Leonard*, 2 *Ball & Beat.* 171. *Glassell* v. *Thomas*, 3 *Leigh* (*Va.*) 113. *Hitchcock* v. *Giddings*, 4 *Price*, 135. 1 *Story's Eq* 157, 158, 160. 2 *Kent's Comm.* 470, 1.) *Roosevelt* v. *Fulton*, (2 *Cowen*, 129,) was decided by this court. Fulton purchased a tract of land of Roosevelt, both parties believing that it contained a valuable coal mine. Woodworth, J., who delivered the opinion of the court, said, " as it is evident the inducement of Fulton to contract was a belief in the existence of a valuable coal mine, if it shall appear that he relied on a state of facts disclosed by the appellant which are found to be untrue, I apprehend it is not material whether the intent was fraudulent, or the representation proceeded from misapprehension or mistake ;" and he adds, " in the words of Chancellor Kent in *Gillespie* v. *Moon*, (2 *Johns. Ch. R.* 596,) that it appears to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing, founded in mistake or fraud." In the case under consideration, the inducement of the respondent for completing the purchase after he learned that the land lay in the site of the proposed street, was the belief that no act had been done which would authorize the corporation to take the land without paying its value : he relied on representations of the appellants, which have proved to be untrue. The whole inducement for completing the purchase has as utterly failed as though he had expected to obtain a coal mine which in truth had no existence.

I think the decree of the court of chancery should be affirmed.

By Senator Paige. I am prepared to assent to the proposition of the vice-chancellor, that a contract entered into under an actual mutual *mistake of the law* on the part of both the contracting parties, by which the object and end of their contract, according to its intent and meaning, cannot be accomplished, is as liable to be set aside as a contract founded in mistake of matters of fact. The [423] proper distinction, in my judgment, is taken in the case of *Lawrence v. Beaubien*, (2 *Bailey, S. C. R.* 623;) *Lownds* v. *Chisolm*, (2 *Mc Cord, S. C. R.* 455 [1827,]) and *Ex'rs of Hopkins* v. *Maryck*, (1 *Hill's Ch. Cas. S. C. R.* 250, [1833,]) between a *mistake* of the law and a mere *ignorance* of the law. This question, it seems to me, was in these cases correctly decided. Several of the cases from the English reports, cited on the argument, were cases where relief was granted against mere mistakes of law ; such were the cases of *Willan* v. *Willan*, (16 *Ves.*

Champlin *v.* Laytin.

72;) *Bingham* v. *Bingham*, (1 *Ves. sen.* 126;) *Pusey* v. *Desbourne*, (3 *P. Wms.* 320;) *Lansdown* v. *Lansdown*, (*Mosely*, 364.) The cases of *Onions* v. *Tyrer*, (1 *P. Wms.* 345,) and *Perrot* v. *Perrot*, (14 *East.* 439,) also recognize the principle that relief may be afforded in cases of mere mistakes of law. The case of *Naylor* v. *Wench*, (1 *Sim. & Stu.* 561,) is to the same effect. So is the case of *Fitzgerald* v. *Peck*, (4 *Lit. Ken. R.* 127.) I cannot see any good sense in the distinction of granting relief against mistakes of fact, and refusing it in cases of acknowledged mistakes of law. Both, in my judgment, ought to be placed on the same footing. If the principles of justice require relief in the one case, they equally do in the other. The vice-chancellor, Sir John Leach, in *Naylor* v. *Wench*, (1 *Sim. & Stu.* 555,) says: " If a party acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property to another, under the name of compromise, a court of equity will relieve him from the effect of his mistake."

Although the case of *Hunt* v. *Rousmaniere*, ultimately turned on another question, (1 *Peters' U. S. R.* 13,) yet the opinion of Chief Justice Marshall in that case, as reported in 8 *Wheat.* 205, clearly shows which way was the inclination of his mind. He says, speaking of the case of *Lansdown* v. *Lansdown*, (*Mosely*, 364,) "that, as a case in which relief has been granted on a mistake in law, cannot be entirely disregarded." And he further says: "Although we do not find the naked principle that relief may be granted on account of ignorance of [424] law, asserted in the books, we find no case in which it has been decided that a plain and acknowledged mistake in law is beyond the reach of equity." And again, (*p.* 216,) he says: "We are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say a court of equity is incapable of affording relief." And Washington, J., in the same case, (1 *Peters*, 15,) in the conclusion of his opinion, says: " It is not the intention of the court to lay it down that there may not be cases in which a court of equity will relieve against a plain mistake arising from ignorance of law." Johnson, J., in *Lawrence* v. *Beaubien*, (2 *Bail-y*, 623,) says: " All the difficulty and confusion which have grown out of the application of the maxim, *ignorantia juris neminem excusat*, appears to me to have originated in confounding the terms *ignorance* and *mistake*: the former is passive and does not presume to reason, but the latter presumes to know, when it does not, and supplies palpable evidence of its existence. He further says, in *Ex'rs of Hopkins* v. *Maryck*, that a mere ignorance of the law is not susceptible of proof, and therefore cannot be relieved; but that a mistake of law may be proved, and when proved relief may be afforded. If relief was to be granted upon every allegation of a mere ignorance of the law, great embarrassments would arise in discriminating between the cases of actual ignorance and those of feigned ignorance. So where the ignorance or mistake of the law is only in one of the contracting parties, and the other party has not taken any advantage of the circumstance in making the contract, it would not be proper to grant relief against such ignorance or mistake; but where a contract is entered into under an actual and reciprocal mistake of law in both the contracting parties, by which the manifest intention of the parties cannot be accomplished, and which *ex æquo et bono* ought not to be binding, and where such mistake is either acknowledged, or undoubted evidence of it is produced, I cannot see any good reason why relief should not be granted in equity, to the same extent as is done in cases of mistakes in matter of fact. The principles of natural justice require that the like relief should be granted in both cases. I would qualify the rule, however, as was done by [425] Johnson, J., in *Lawrence* v. *Beaubien*, and deny relief if it appeared the contract was the compromise of a doubtful right, or was entered into as a speculating bargain. By adopting the rule with these qualifications, in my judgment no mischievous consequences would follow, but on the contrary the interests of justice would be advanced.

If, therefore, the mistake of the contracting parties in this case was one of law merely, I am nevertheless of opinion that the decree of the court of chancery ought to be affirmed. But I am inclined to believe that the purchaser, Laytin, is also entitled to relief upon the ground of a mistake on his part in matters of fact, the ground upon which the chancellor placed his decision. I can see no error in the decree appealed from, and I am therefore for affirming it.

*Senator* Tracy said that he should vote for an affirmance of the decree, on the ground of the breach of the covenant contained in the deed executed by the appellants, that they had not done, committed, or suffered any act whereby to charge or encumber the premises.

On the question being put, *Shall this decree be reversed?* all the members of the court, (27 being present,) voted in the *negative*. Whereupon the decree of the chancellor was unanimously AFFIRMED.