MARY H. MACKNET

v.

THEODORE MACKNET and others, executors, and others.

A widow's election to take her dower instead of a legacy in lieu thereof, made under a mistake as to her rights, may be revoked, *nunc pro tunc*, and she placed *in statu quo*, unless the situation has so changed since her election that it cannot be done without prejudice to the subsequently-acquired rights of others.

Bill for relief.　On final hearing on pleadings and proofs.

*Mr. C. S. Titsworth* and *Mr. C. Parker*, for complainants.

*Mr. J. W. Taylor*, for the executors.

THE CHANCELLOR.

Charles S. Macknet, deceased, late of Newark, by the second, third, fifth, and seventh sections of his will, made certain provisions for his wife, and by the eighth he gave to her son by a former husband the interest of a sum of money for life.　By the ninth section he declared that all the provisions in the will, made for the benefit of his wife and her son, were to be in lieu and satisfaction of her right of dower, and all other interests she might have in his estate, her acceptance of the provisions to be determined by a relinquishment by her, to be made in writing, of such dower and interest within three months after his decease.　By the twenty-fourth section he directed that during the minority of her daughter Hattie, his child, the income of the estate which he had thereinbefore bequeathed to the latter and to her use, should be paid to his wife, she remaining his widow unmarried, for the support, maintenance, and education of Hattie; and he provides that in case of his wife's death or remarriage, so much of the income of Hattie's estate as

might be necessary for her liberal support and education should be paid by his executors, whom, in either of those contingencies, he constituted her guardian. Mrs. Macknet, on the 11th of June, 1872, within the time limited for the purpose in the will, filed her dissent, and refused to accept the provision made for her by the will in lieu of her dower, and her dower was subsequently assigned to her.

On the 20th of February, 1873, the executors filed a bill in this court for a judicial construction of the will. *Macknet's ex'rs* v. *Macknet*, 9 *C. E. Gr.* 277. The final decree in the cause was filed on the 20th of March, 1874. It adjudged that Mrs. Macknet was entitled to receive all the income of her daughter's share. Under the leave given in the decree to apply for further directions, a petition was presented to this court by Hattie, then ten years of age, by her next friend, Theodore Macknet, one of the executors, in which it was stated that since that decree it had been ascertained that the annual income of her share amounted to not less than $10,000, and it prayed that it might be ascertained and determined what was a reasonable allowance out of the income for her fair and liberal support, maintenance, and education; whether the surplus or residue of the income, after deducting such allowance, belonged to her or to her mother; whether, if the surplus was not the property of the latter, the executors were bound to pay it over to her; if they were bound to pay it to her, whether it was her duty to invest it, and see to the accumulation thereof for Hattie; and, if the executors were not bound to pay the surplus over to Mrs. Macknet, whether they were themselves bound to invest it and see to its accumulation for Hattie.

On the 28th of September, 1875, a decree was made on that petition directing the executors to pay over to Mrs. Macknet, so long during Hattie's minority as she should remain the testator's widow, the entire income of Hattie's share. *Macknet's ex'rs* v. *Macknet*, 11 *C. E. Gr.* 258.

From both of those decrees an appeal was taken, and in the term of June, 1876, of the court of errors and appeals, a

decree was made reversing the last decree, the court holding that Mrs. Macknet, under the operation of the provision of the ninth section of the will, was not entitled to the surplus of the income of Hattie's share over the amount necessary for the support, maintenance, and education of the latter. *Macknet* v. *Macknet*, 12 *C. E. Gr.* 594.

The decree of the court of errors and appeals was filed in July, 1876, and the bill in this cause was filed on the 14th of August following. The bill prays that the complainant may be permitted to withdraw her dissent, filed in the surrogate's office, and that she may be permitted to accept the provisions of the will in lieu of her dower, *nunc pro tunc;* and that her election may be set aside and annulled on the ground that she was mistaken as to the probable amount of the income of Hattie's share; and, also, as to the effect of her election on her right to receive that income. The bill alleges that the estate remains in substantially the same condition in which it was at the time of the testator's death, so that if she is now permitted to accept the provisions of the will it will not in the least interfere with the due and proper settlement of the estate, or with the rights of any person having any interest therein. The answer does not deny the truth of this allegation. It insists that the complainant, when she filed her dissent, was under no mistake, except it may be a mere mistake of law, and claims the benefit of her election.

The complainant alleges, and she and her counsel both testify, that she was advised by her counsel that her right to the full benefit of the provision which directed the payment to her of the income of Hattie's share would not be taken away by her refusal to accept the provision made for her in the will in lieu of dower, and that her counsel informed her that the executors and their counsel concurred with him in his opinion on that subject. She swears that had she known her rights, or had she had the least suspicion that the provision in regard to the income of Hattie's share might be regarded as part of the provision in lieu of dower,

she would not have dissented, but would have accepted the provision made for her by the will. The proof is, that when she made her election she supposed that the income of Hattie's share would not exceed from $3,000 to $5,000 a year, and that she therefore considered it prudent not to relinquish her dower, which would, as she supposed, be productive of more income than the provision made by the will. She testifies that if she had known that the income of Hattie's share would have amounted to, or in the neighborhood of, $10,000 a year, she would have accepted the provision of the will without hesitation. In this she is corroborated by the testimony of her counsel. There is corroboration, also, in the petition filed for Hattie. It was filed for her by one of the executors (her half-brother), as her next friend, and is sworn to by him. It states that since the decree of this court in the suit for construction of the will, it had been ascertained that the income of Hattie's share amounted to a sum not less than $10,000 per annum. It bears evidence on its face that it owed its origin to the fact that the income of Hattie's share had proved to be unexpectedly large.

The answer denies that the executors or their counsel entertained or expressed the opinion at any time that the provision of the twenty-fourth section of the will was not one of those intended in lieu of dower. One of the executors testifies, however, that on the hearing of the suit for construction of the will, their counsel "held that Mrs. Macknet took Hattie's share, without being liable to account for it," and he says he "quarreled with" their counsel "somewhat about it." If the counsel of the executors did, in fact, concur with the complainant's counsel in opinion, then the mistake in reference to the effect of the dissent was mutual. It appears, it may be remarked, from the record, that the view taken by the complainant's counsel on that subject, and, as he alleged, by the counsel of the executors also, was in accordance with the judgment of this court and that of the minority of the judges of the appellate tribunal. If it had

been shown that the complainant's counsel was in error as to the fact that the counsel of the executors concurred with him, it would still stand established by the proof that the complainant was informed by him that the counsel of the executors did so concur, and it would still appear that she acted upon the advice and information. And, further, it appears that neither the executors nor their counsel, at any time before she filed her dissent, stated to her that she would forfeit, by dissent, her right to the surplus of her daughter's income, or even suggested the existence of a doubt on the subject. She had a right to know the probable consequences of her dissent, and if she was misled on that score and discovered her error while as yet there was time to retract the dissent, and made speedy application for leave to do so, she ought to be placed *in statu quo*, unless the situation has so changed since her election that it cannot be done without prejudice to the subsequently-acquired rights of others. *Rumbold* v. *Rumbold*, 3 *Ves.* 65. In *Wake* v. *Wake*, 1 *Ves.* 335, a widow, after having received a legacy, and for three years an annuity, between which legacy and annuity and her dower she was bound to elect, filed her bill for her dower. It was held by Buller, J., sitting for the lord chancellor, that the receipt of the annuity for three years, and the legacy, did not prevent her right of election, she being presumed not to have acted with full knowledge which would bind her. "The point is," said he, "whether she had full knowledge of the circumstances of the testator, and of her own rights. If she had acted with full knowledge she should not afterwards deny it, but after three years only I cannot say she is not entitled."

In *Snelgrove* v. *Snelgrove*, 4 *Dessaus.* 274, where a widow had, conformably to the will, enjoyed the full benefit of its provision in her behalf for life, and the will proved to have been invalid, it was held that her representatives might, nevertheless, be let in to claim her right to the property under the statute. The court said: "This (the election)

arose out of the error of all parties, and was not a fair election made by her when conusant of all her rights."

The defendants insist that the complainant seeks to be relieved from a mere mistake of law on her part.

Though mistake in matter of law cannot, in general, be admitted as a ground of relief in equity, the rule has its exceptions. *Hunt* v. *Rousmaniere's adm'r*, 1 *Pet.* 1; *Green* v. *M. & E. R. R. Co.*, 1 *Beas.* 165. "The maxim *juris ignorantia non excusat*," says Kerr, "is not universally applicable in equity. If the word *jus* be used in the sense of denoting general law, the ordinary law of the country, no exception can be admitted to the general application of the maxim; but it is otherwise when the word is used in the sense of denoting a private right. If a man, through misapprehension or mistake of the law, parts with or gives up a private right of property, or assumes obligations upon grounds on which he would not have acted but for such misapprehension, a court of equity may grant relief, if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot, in conscience, retain the benefit or advantage so acquired." *Kerr on F. and M.*, 398. The complainant's mistake, however, was rather a mistake of fact than of law. She considered the provision made for her by the will, irrespective of her daughter's income, insufficient for the proper support of herself and her daughter, and the education of the latter, and, as between that provision and her dower, therefore, preferred the latter, but expected to enjoy, and believed that she had an undoubted right to enjoy, the benefits of the income in connection with either. She was in error as to one of the factors in the calculation. Misapprehension of rights under a deed, not arising from the misconstruction of the deed, has been treated as a mistake of fact. *Denys* v. *Shuckburgh*, 4 *Y. & C.* 42.

The proof shows that the complainant acted upon what the defendants say was error, the assumption that her counsel and the counsel of the executors agreed in the opinion that her dissent would not affect her claim to the income of

her daughter's share. Her error as to the probable amount of her daughter's income was a mistake of fact. Had she been properly informed on that score she would have accepted the provisions of the will. This was a mistake, as to a fact, of such preponderating influence that, had she been fully informed in reference to it, the question as to the advisability of taking her dower would not have existed. She was entitled, before making her election, to full knowledge of the value of the income of Hattie's share, and a clear knowledge of the effect of her dissent on her right to that income. 1 *Roper on H. & W.* 601; *Clancy's Rights of M. W.* 249; *Pusey* v. *Desbouvrie,* 3 *P. W.* 315, 321; see, also, *Pickering* v. *Pickering,* 2 *Beav.* 31, 56.

The case of *Pusey* v. *Desbouvrie,* cited above, is very much in point. There a freeman of London made his will, giving to his daughter £10,000, upon condition that she should release her orphanage part, together with all her claim or right to his personal estate by virtue of the custom of the city of London or otherwise, and made his son executor. The daughter was of about the age of twenty-three years. After her father's death it was agreed between her and her brother that she should accept of her legacy of £10,000, upon the terms on which it was given to her by the will, viz., the release by her of all her right by virtue of the custom, &c. The release was prepared, and before she executed it her brother informed her, in the presence of her uncle, that she had a right to an account of her father's personal estate, and to have her orphanage part; but she then declared that she would accept the legacy, that it was sufficient provision for any young woman, and she thereupon executed the release. She was then about twenty-four years old. Her brother paid her the £10,000 and interest. She afterwards married, and her husband brought a bill to set aside the release, charging that the personal estate of her father was much above £100,000, and that the daughter's share of it, by the custom, would amount to more than £40,000. The mother had been compounded with for her

customary part, and, consequently, the dead man's part was one-half, and the children's the other. The brother pleaded the release.

The lord chancellor (Talbot) said that he did not see that any manner of fraud had been practiced in the case, but that it still seemed hard that a young woman should suffer for her ignorance of the law or the custom of the city of London, or that the other side should take advantage of such ignorance. Stating the fact that not only had counsel differed, but courts themselves had varied in their deter-minations as to the effect where the wife had been compounded with for her customary part, he said: " And if the courts themselves have not till very lately agreed in what shares or proportions these customary parts shall go, the daughter, surely, might be well ignorant of her right, and ought not to suffer or give others advantage by such her ignorance." After presenting other considerations favorable to granting the relief, he ordered that the plea stand for an answer, saving the benefit thereof till the final hearing, and ordered the defendant to answer as to the value of the personal estate.

In the case under consideration, the executors have no such interest in Hattie's income that they can gainsay the complainant's right to relief so far as that income is concerned. Nor can Hattie deny the claim except it be on the ground that the election is binding, and was not made under such circumstances as to warrant the court in relieving the complainant from it. No rights of any person have supervened since the election to prevent this court from granting the relief. It may be remarked that it is from an election that relief is sought in this case; not from a contract. The complainant made the election not only under a mistake as to the amount of the income, when she had a right to full knowledge on that head, but, also, under a mistake as to her rights (as to which she had a right to clear knowledge), arising from misinformation conveyed to her with such assurance of its unquestionable correctness

and reliability that she was fully justified in accepting it as undeniably correct, and in acting on it accordingly. Under the circumstances she ought to be relieved from it. The relief sought by the bill will, therefore, be accorded.