JOHN S. MELLON ET AL., Respondents, v. BENJAMIN F. WEBSTER ET AL., Appellants.

April 2, 1878.

1. Where it is agreed that a conveyance of land shall be made subject to the encumbrance of a deed of trust to secure the payment of notes, a tender of a deed which recites that the grantee assumes the payment of the deed of trust is not a compliance with the contract, and the grantee is not bound to accept such a deed.

2. Where a layman, dealing with a lawyer, manifestly against his intention and in plain ignorance of law, is led to do the very opposite of what he expresses his intention to do at the time, and to release another's rights as well as his own, and where the consideration for such release has never passed, a court of equity will disregard such release as obtained by imposition and misrepresentation (which may occur though not a false word has been said), misplaced confidence and surprise. The release not having been fairly entered into according to its tenor, a court of equity will neither enforce its execution nor make a new agreement for the parties.

3. Where there is evidence to support the finding of a referee, it will not be disturbed on the suggestion that it is against the weight of evidence.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

LEE & ADAMS, for appellants : A misrepresentation of a matter of law does not constitute fraud at law, because the law is presumed to be equally within the knowledge of all the parties ; and the misrepresentation of the legal effect of a written agreement, which a party signs with a full knowledge of its contents, is not a sufficient ground for avoiding the agreement. — *Platt* v. *Scott*, 6 Blackf. 389 ; *Russell* v. *Branham*, 8 Blackf. 277 ; *Starr* v. *Bennett*, 5 Hill, 303 ; *Martin* v. *Wharton*, 38 Ala. 637 ; *Fish* v. *Cleland*, 33 Ill. 238 ; *Goode* v. *Hawkins*, 2 Dev. Eq. 398 ; *Harney* v. *Charles*, 45 Mo. 157. A contract cannot be made in such a way as that the obligees may, at their election, join or not. If it is joint, all must sue ; if it is several, it cannot be sued on jointly. — *Clark* v. *Cable*, 21 Mo. 223.

POPE & McGINNIS, for respondents : An agreement to convey " *subject* to an encumbrance " is not complied with

by the tender of a deed stating that purchaser "*assumes and agrees to pay* the encumbrance."—*Rogers* v. *Gosnell*, 51 Mo. 465 ; *Luckett* v. *Williamson*, 31 Mo. 56 ; *Fitzgerald* v. *Barker*, 4 Mo. App. 105. If, in an action for specific performance of a contract to convey real estate, defendant, pending the suit, incapacitates himself to convey to plaintiff, court will retain the suit and give damages for breach of contract. — *Hamilton* v. *Hamilton*, 59 Mo. 232 ; *Holland* v. *Anderson*, 38 Mo. 55 ; *Woodman* v. *Freeman*, 25 Me. 531 ; *Woodcock* v. *Bennett*, 1 Cow. 711 ; *Morss* v. *Elmendorf*, 11 Paige, 277. If a lawyer, dealing with a person who is not, induces that person to execute a written instrument, and the lawyer perceives, at the time, that the other party is misled as to the legal effect of such instrument, and is unconsciously doing precisely what he said he would not do ; and the lawyer admits that in the preparation of the instrument he designed such results, and seeks an advantage from it ; and, besides, has parted with no consideration in order to obtain it, such instrument so procured is void, both because of fraud and want of consideration.—*Colter* v. *Morgan*, 12 B. Mon. 278 ; Kerr on Fraud (ed. 1872), 90, 400 ; Pars. on Part. (2d ed.) 116, 117 ; 16 Am. L. Reg. 575.


BAKEWELL, J., delivered the opinion of the court.

This was a proceeding in equity to enforce the specific performance of a contract to convey lands. It appears that plaintiffs and defendants were in the real-estate business in St. Louis, and, at a time when plaintiffs were copartners and defendants were copartners, owing to some business transaction, the nature of which does not appear, they became interested together in a tract of land fronting fifty feet on Lafayette Avenue, in St. Louis, on which certain buildings were erected, and which was encumbered by a deed of trust for $6,000. The land was conveyed to defendants, who held the legal title to it, and on the 11th of July, 1874, as a settlement and compromise of a contro-

versy which had arisen regarding the respective interests of plaintiffs and defendants in the property, and in settlement of all claims that one party might have against the other, in regard either to that land or certain other land in Illinois for which it had been exchanged, they entered into a written agreement, by which Webster and Flanagan undertook to convey to Mellon and Tippett the property in question, subject to the deed of trust for $6,000, due 18th of December, 1876, and to an interest-note for $270, due 18th of June, 1874, in consideration of $930, to be paid to them by Mellon and Tippett on 20th of July, 1874. Accordingly, Webster and Flanagan executed a deed to plaintiffs for the land in question, which they deposited in bank, to be delivered on payment of this money. This deed stated the consideration at $7,500 ; used the words "grant and quitclaim ; " contained covenant of warranty only against the acts of the grantors ; stated that the grantees assumed the payment of the principal note of $6,000, and of the interest-note of $270 ; and that the conveyance was subject to taxes for 1874. Respondents went to the bank on the day named with the money, according to agreement, but refused to receive the deed, on the ground that it was not according to agreement, and on the ground also that there was a two years' lease of the premises. On 15th of September, 1874, this suit was brought for specific performance. A few days after the suit was begun, defendants conveyed the equity of redemption to one Allen, for the nominal consideration of $10,000. The real consideration was certain property in Carthage, Jasper County, subject to a small encumbrance. This deed was dated 14th of September, but was not acknowledged and delivered until the day after defendants were served with summons in this suit. The week preceding the trial, defendants obtained from Tippett, who was the son-in-law of his co-plaintiff, Mellon, a release, under his seal, of all claims under the contract, to enforce which the suit was brought. It is claimed by plaintiffs that this release is

void for fraud. On the trial, some evidence was introduced as to the value of the land. But the court declined to receive further testimony on that point, stating that if the issues were found for plaintiffs, the question of damages would be referred. The court found for plaintiffs. The referee took testimony as to the value of the property, and fixed the damages at $1,218.24. The report was confirmed, against the exceptions of both parties. Judgment was for the amount found by the referee; and defendants appeal.

1. It is claimed by defendants that the deed tendered to plaintiffs was a compliance with the agreement. It is manifest, however, that it was not. The agreement was that respondents should take the land subject to the encumbrance, not that they should assume the encumbrance. If respondents had accepted the deed as executed, they might, in case of depreciation of the property by fire or otherwise, have been liable, after losing the property, for a balance due upon the notes at the suit of the holder. *Fitzgerald* v. *Barker*, 4 Mo. App. 105. This was not their agreement. It is unnecessary to say in what other respects the deed may not have been such as they were entitled to under the agreement to convey.

2. It is claimed that the release by Tippett was a full discharge. The consideration named in the release is five dollars. The consideration agreed upon between the parties was that Flanagan should remit an indebtedness of $50 due by Tippett to Webster and Flanagan, and for which they held a conveyance of certain lands in Illinois, and that they should reconvey this land to Tippett. At the time of the trial no money had been paid Tippett, the land had not been conveyed, and nothing had been done to release him from his debt. Flanagan and Webster are lawyers. Webster certifies that he makes a specialty of real-estate law. He understood that the effect of the release from Tippett would be to release also all right of action on the part of his coöbligee, Mellon. Tippett

swears that he had no idea that the release could have any such effect. He also swears that he expressly and repeatedly stated to Flanagan that he would do nothing to affect the claims of Mellon in any way; and that Flanagan, with whom he arranged the terms of the release, replied, " You can do what you please with your own;" and, without expressly saying so, led him to believe that the release could not affect Mellon in any way. Tippett is contradicted by Flanagan in this: that Flanagan swears Tippett said nothing about Mellon's interest, and did not mention Mellon, except that he said, when the agreement was made, referring to Mellon, " The old man will raise hell about this." Tippett admits that he said this, but reiterates that he expressly and repeatedly declared that he would do nothing to impair the right of Mellon, and that he was relinquishing his interest. Perhaps the trial court believed Tippett rather than Flanagan. Assuming, as we shall, that Tippett swore to the truth, we have then the case of a lawyer dealing with one ignorant of law, and inducing him to execute a written instrument which, on its face and by its tenor, purports to effect precisely what the layman intended to effect, but which in legal effect, as the lawyer knows, does more than this, and has a force quite contrary to that which the layman intended it should have. The lawyer admits that he designed this result in preparing the instrument; that he desired by the release signed by one, to obtain a release from his obligation to both. He does not pretend that the layman, in signing, had any intention of affecting the interest of his coöbligee. He now seeks advantage from this instrument, and from the mistake of law into which, by his silence at least, he has helped to betray the layman; and it appears that he has parted with no consideration whatever to obtain the instrument. Under these circumstances, we think that the trial court committed no error in disregarding this release. It is said, *Ignorantia legis neminem excusat.* That is axiomatic, and a maxim

both in law and equity. Ignorance of law furnishes no
excuse for a breach or omission of duty; it shall not affect
agreements, nor excuse from the legal consequence of par-
ticular acts.    The ground of the rule is, that otherwise there
is no saying to what extent the excuse of ignorance might
not be carried.    Agreements made in good faith, but under
a mistake of law, are generally held to be valid.    Thus, if
the obligee releases one of two bound on a bond, both are
released, though he did not intend it; because the one
obligee may, of course, avail himself of the release, and
there is nothing inequitable in the other insisting upon his
release if they have both acted in good faith.    But where
there is a mistake of a plain, well-settled principle of law,
and under such a mistake one parts with a right of which
he is wholly ignorant, to one not acting in good faith, a
court of equity has frequently granted relief.    *Dunnage* v.
*White*, 1 Swanst. 137 ; *Hunt* v. *Rousmaniere*, 8 Wheat. 211 ;
*Hunt* v. *Rhodes*, 1 Pet. 1 ; 1 Story's Eq. 134.    Certainly
we believe that in the case presented here, where a layman
dealing with a lawyer, manifestly against his intention and
in plain ignorance of law, is led to do the very opposite of
what he expresses his intention to be at the time, and to
release another's rights as well as his own, a court of equity
will disregard such release as obtained 'by imposition and
misrepresentation (which may occur, though not a false
word has been said), misplaced confidence and surprise.
When appellants, who were lawyers, saw that Tippett
totally misapprehended the legal effect of the instrument
he signed, it was their duty to speak ; and by their silence,
in the face of his declarations (taking his testimony as to
these declarations to be true), they told him that the instru-
ment was no release of Mellon, as plainly as if they had
said so in so many words.    If the release was void as to
Mellon, it was altogether void.    And, as the consideration
which Tippett was to receive for executing it has never been
paid, we see no error in the action of the Circuit Court, so

far as this release is concerned. The contract not having been fairly entered into according to its tenor, equity will not compel Tippett to execute it, nor will it make for the parties a new agreement. What we have just said is based upon the supposition that Tippett, as against Flanagan, is to be believed when he swears that he did expressly state that it was his purpose to do nothing which could jeopardize the claim of Mellon. The testimony of Flanagan, as we shall see when we come to consider the next point, is not entirely consistent with itself; and if we could plainly see that the trial court has given credit to Tippett rather than to Flanagan, where their testimony does not agree, this would not be ground for reversing the judgment. The trial court, which sees the witnesses on the stand, can judge far better than we can do as to their relative credibility. But, in truth, if the learned judge rather believed Flanagan, the case is not then very materially changed. It must then be said that Tippett did not speak of Mellon. But the fact remains that no warning was given him by these lawyers that he was jeopardizing Mellon ; that he had no legal advice, and was ignorant of and mistaken as to the law ; that the release says nothing of Mellon ; that he was led by what Flanagan said as to "doing what he pleased with his own," as well as by all that passed, and was designedly led, to believe that he was dealing with his own rights only ; and that the instrument was prepared by Webster for the express purpose of getting a release from all liability of Flanagan and Webster to the two joint obligees, by obtaining a formal written release from one of them alone.

3. It remains to consider the exceptions to the report of the referee. He finds the value of the property in July, 1874, to be $8,500, and its value in excess of the encumbrance to be $2,230. The testimony as to its value is contradictory. All the leading real-estate auctioneers of the city would seem to have testified on one side or the

other.   Plaintiffs' witnesses fix the value at from $12,000 to $10,000.   Those of defendants, from $6,500 to $5,500; which last valuation is the lowest price named, and is the estimate of only one man, though one certainly whose opinion in that matter is entitled to great respect.   The defendant Flanagan testified before the referee that he never estimated the property as worth, in July, 1874, over $6,500, but on the trial, a few months before, he had sworn that he considered it worth, at that time, from $7,500 to $8,000. Defendant Webster, on the trial, valued the property at $8,000, whilst before the referee he testified that it was worth no more than $6,800.   Flanagan also testified that the encumbrance existing on the property was placed on it by one Burke, its former owner, when in embarrassed circumstances; that he was asked by Burke to get the loan; that he would not recommend it to any of his own clients, because he did not consider the property good for that amount, but that he got one Moody, another real-estate agent, to obtain the money; that he does not recollect what he may have said to Moody as to the value of the property. Mr. Moody testifies, without contradiction, that both Flanagan and himself recommended the property as good for a loan of $6,000, and that Flanagan said it was safe, and got his share of commission for making the loan.   It is plain, therefore, that we have no right to disturb the judgment on the ground that the referee, in fixing the value of the property at $8,500, has gone against the evidence.   The witnesses who value the property at from $10,000 to $12,000 are amongst the best known and most experienced real-estate dealers of the city; and the same may be said of defendants' witnesses, who value it at about the amount of the mortgage, and of whom one says it was not even worth the debt.   If, as the referee very properly found, the property was worth $8,500, an easy calculation shows that his finding was not otherwise excessive; and certainly, on

the basis of $8,500 as the value of the property, it was not one of which appellants on that score could complain. We see no error in this record for which we ought to reverse the judgment. It will therefore be affirmed. All the judges concur.