statute may be claimed to modify or limit his powers. Nor does he need to invoke Section 11321, General Code, to authorize this application of dividends.

It is our conclusion that the foregoing disposes of the matter before us. However, if it does not, the facts and circumstances of this case are such that they call for the application of the doctrine of equitable set-off more loudly than usually exists in some cases wherein the doctrine is applied to the end that all interested in this trust may share equally and equitably their deserved benefits and all equally and equitably bear their proper burdens. *King* v. *Armstrong, Rec'r.*, 50 Ohio St., 222, 34 N. E., 163; *Andrews* v. *State, ex rel. Blair*, 124 Ohio St., 348, 178 N. E., 581, 83 A. L. R., 141; *Reichert* v. *Farmers' & Workingmen's Savings Bank*, 257 Mich., 500, 242 N. W., 239, 81 A. L. R., 1461; *In re Carolina Bank and Trust Co.*, 197 N. C., 613, 150 S. E., 118.

*Decree for defendant.*

LEVINE, P. J., and TERRELL, J., concur.

SCHUCK, EXRX., APPELLANT, *v.* McDONALD, APPELLEE.

(Decided February 16, 1938.)

*Mr. Christian R. Wingerd,* for appellant.
*Messrs. Amerman & Mills,* for appellee.

SHERICK, J.   The question presented by this appeal concerns a matter which has perplexed the bar of this state since the adjudication of *Swisher* v. *Orrison Cigar Co.,* 122 Ohio St., 195, 171 N. E., 92. It has to do with the right of a payee, or rather that of a holder by assignment, of a promissory note, which contains a power of attorney authorizing the confession of judgment against the maker thereof, to procure a judgment thereon by confession against him after the death of the maker.   In other words the query is: May a judgment be confessed against a dead man?

On June 1, 1936, John A. Bachtel executed and delivered to Minnie Schuck his certain promissory note, which contained the following warrant of attorney:

"And I hereby authorize any attorney at law to appear in any court of record in the United States, after the above obligation becomes due and waive the issuing and service of process and confess a judgment against me in favor of the holder hereof, for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal."

Thereafter Minnie Schuck endorsed and transferred this note to Carrie McDonald. On July 30, 1937, John A. Bachtel died.   On August 2, 1937, Carrie McDonald, the legal holder, procured a judgment thereon by confession not only against the deceased maker but also against Minnie Schuck as payee and endorsee.   On November 5, 1937, at a subsequent term of court, Minnie M. Schuck, in her representative capacity, filed her petition and commenced a proceeding to vacate the judgment previously entered against her decedent. The petition was demurred to.   The demurrer having been sustained and there being no desire to plead fur-

ther, the petition was dismissed. The appeal is from this order.

Before proceeding further, let it be made known that the petition does not contain a copy of the note with its incorporated power of attorney; neither is mention made of the facts disclosing that the judgment sought to be vacated was a joint judgment. We are advised of these facts by the trial court's opinion and examination of the files in the case upon which the judgment was entered. One further comment. The petition and relief sought are, without doubt, grounded on paragraph six of Section 11631, General Code, which prescribes that a judgment may be vacated "for the death of one of the parties before the judgment in the action." In as much as the demurrer admits that the judgment was taken after the death of the maker, we feel at liberty to examine and consider the original files in the action upon which the judgment complained of was entered, for the reason that a demurrer searches the record, and as said in *Bever* v. *Beardmore,* 40 Ohio St., 70, at page 78, in speaking of a petition to vacate after term: "It is not of itself a civil action; but a special proceeding in an action to effect a judgment rendered therein at a former term of the same court. * * * It is professedly an application for a new trial."

This court is not concerned with the status of the judgment as it exists against the payee and endorser, Minnie Schuck, except in so far as it affects the right of the attorney at law to confess a joint judgment under the terms of the warrant of attorney as it hereinbefore appears.

It is our purpose to consider the error complained of in the sustaining of this demurrer from three independent view points, the first of which necessitates a consideration by the court of the matters of fact, previously noted, which do not appear within the petition.

Our right to so consider them has heretofore been vindicated.

We have at the inception of this opinion stated that confusion exists since the decision of the *Swisher case, supra,* because of a seeming conflict in reasoning with the court's finding in *Hoffmaster* v. *G. M. McKelvey Co.,* 88 Ohio St., 552, 106 N. E., 1061. The reason for any uncertainty is perhaps due, in part, to the facts that report of the *Hoffmaster case* is confined to the court's journal entry; the holding of the *Swisher case, supra,* in that a warrant of attorney is a power coupled with an interest which survived the maker's adjudication of mental incapacity; and the fact that the *Hoffmaster case* is cited as authority in the *Swisher case.* There may be a further reason embodied in the conclusion to be drawn from the argumentation and what was actually held and done in *Hunt* v. *Rousmanier's Admrs.,* 21 U. S. (8 Wheat.), 174, 5 L. Ed., 589, of which we will hereinafter have more to say. It is our judgment that both the *Hoffmaster* and *Swisher cases* were, upon principle, rightly decided and when the facts are understood and precedent reviewed apparent incompatibility disappears.

In the *Hoffmaster case* a judgment had been confessed against one Emarinda Smith, a co-maker of a cognovit note with one George Smith, who had died prior to the rendition of the individual judgment against her. The McKelvey Company, which held this judgment against Emarinda Smith, sought to enforce their lien, acquired by virtue of an execution and levy upon her property against Hoffmaster and another lien holder. The court found the lien to be void for it had been, "rendered on the appearance of defendant [Emarinda Smith], being entered under authority of a joint warrant of attorney against one of the parties to such warrant; it appearing on the face of the record that the other party signing such warrant of at-

torney had died prior to the entry of such appearance, said joint power was revoked by power of law.''

The reason back of this holding is found in the second paragraph of the syllabus of the early case of *Cushman* v. *Welsh,* 19 Ohio St., 536, which established, that:

''A warrant of attorney to confess judgment must be strictly construed, and the authority thereby conferred cannot be exercised beyond the limits expressed in the instrument.''

Therefore the power being joint, and, the co-maker having died prior to the exercising of that power, it could not be thereafter exercised because the power itself was revoked by force of law. In other words it was reasoned that death of a co-maker before judgment was confessed revoked the power by operation of law.

The Court of Appeals of the Ninth Appellate District in *Saulpaugh* v. *Born,* 22 Ohio App., 275, 154 N. E., 166, followed the reasoning of the *Hoffmaster* entry and applied its principle to a state of facts wherein a joint judgment was confessed against the two makers of a note after the death of one. The survivor sought the judgment's vacation. The judgment was vacated upon this reasoning, which we adopt.

''Where a joint promissory note, signed by two, has a joint warrant of attorney attached thereto, authorizing any attorney at law to appear in any court of record and waive the issuing and service of process and confess a judgment against 'us or either of us,' said attorney at law cannot waive the issuance and service of process as to one only, and confess a judgment as to that one; in other words, under the wording of the warrant of attorney as set out in the note sued upon in this case, it is necessary to enter the appearance of each of the makers of said note before an attorney at law has the right to confess a judgment

against one or both of the makers thereof, but in this case, as one of the makers of said note was dead at the time of the exercise of said warrant of attorney, said attorney at law was disabled from entering the appearance of the one that was dead, and was thus prevented from entering the appearance of both; the entry of the appearance of both being a condition precedent to a judgment by confession against one or both.''

If we are correct in our premise, that is, concerning the facts borrowed, then upon logic and precedent the order before us must be found erroneous. The power conferred by the warrant of attorney was to confess a judgment against Bachtel. It was not a joint power which permitted the confession of judgment against his payee, as an endorser. The payee was the recipient of the power and not its maker. Under the rule of strict construction, the power was improperly exercised as in the *Hoffmaster case.*

And now we would consider the question from a different angle, that is, from the bare facts of the petition admitted by the demurrer to be true. The matter would then stand as if John A. Bachtel alone had signed this note, as he did in fact. In such a case: Does his death terminate the power of attorney, or is it coupled with such an interest which survived his death?

We are mindful of the declaration of our Supreme Court that the syllabus states the law of the case, but only in so far as the facts warrant. With this before us, we find it declared in the *Swisher case,* that ''a warrant of attorney in a promissory note, authorizing any attorney at law to confess judgment thereon * * * is a power coupled with an interest, and cannot be revoked by the maker''; but this is not the end of the thought. The court continues: ''Nor will the power be revoked as a matter of law by the action of a court finding and adjudging that the maker * * * had be-

come mentally incapacitated, and appointing a guardian for the maker.'' It is apparent that the first stated portion is not a positive and independent statement of a rule of law, but is dependent upon its second thought. The qualification is that the law would not operate to revoke the power in case of an adjudication of insanity. Why should it? The power was given to afford the payee or holder with an expeditious remedy towards collection of his bill in the event of non-payment when due. The credit or loan might not have been secured without it. It was a part of the consideration for the loan. The maker was not to be relieved therefrom upon his mere whim. This form of paper has grown with the demands of business and it is now well recognized that such a power once fairly given may not be arbitrarily withdrawn. On the other hand a maker who became insane, might, before the note was paid and after due date, regain his sanity. There is a considerable gulf between insanity and death; from the latter there is no recovery.

In view of the Supreme Court's rule on construction of syllabi, and the facts of the *Swisher case,* as they appear, it is evident that the court therein was not ruling upon a case where the maker of the note and power of attorney had died before the confession of judgment. It was determined that the power was irrevocable if insanity intervened but not that its efficacy endured after death. If *Johnson* v. *National Bank,* 320 Ill., 389, 151 N. E., 231, 44 A. L. R., 1306, and kindred cases are examined, it will be perceived that the *Swisher case* is in line with the majority of modern holdings. It is the reasoning or conclusion that such a power of attorney is a ''power coupled with an interest'' that creates the rub. At least one case advances a different deduction. We find it announced in *Spencer* v. *Reynolds,* 9 Pa. County Court Rep., 249, that: ''It is not a power coupled with an interest, but it is a power

which has grown up under our common and statute law, which the defendant cannot, by any act of his, revoke.''

In as much as the conclusion of the *Swisher. case* and related authorities all go back for their reason to *Hunt* v. *Rousmanier's Admrs., supra,* and adjudications predicated upon that authority, and because of the fact that the appellee urges her position to be unassailable by reason of Chief Justice Marshall's unescapable logic in that case, this court has given that opinion that intensive study which it richly deserves. We hold in highest respect the opinion of those august tribunals which have considered this case as authority in causes like the *Swisher case, supra,* but we, in candor, confess our inability to follow the reasoning of those courts or to draw therefrom any such conclusion, unless it be joined with the positive reservation that any such power, if it be coupled with an interest, in case of death of the maker before confession of judgment, is revoked by operation of law. It is our own judgment that *Hunt* v. *Rousmanier's Admrs.,* is a complete refutation of the appellee's claim. This we believe may be demonstrated beyond any logical attack.

Rousmanier secured certain sums of Hunt, who received in return certain promissory notes which evidenced the debts. A mortgage or bill of sale upon an interest in two vessels was offered as security for the notes. Upon advice of counsel, Hunt requested and received a power of attorney in lieu thereof. It authorized Hunt to sell these ship interests in case of default to satisfy his claims. It was the mutual thought that this was sufficient security and equivalent to a mortgage or bill of sale where title passed. It was considered more convenient. Rousmanier died in default and insolvent. Thereafter Hunt sought by a bill in equity to exercise his power and assert his claimed lien. The petition was demurred to. The court said:

"This instrument contains no word of conveyance or of assignment [the same is true of the power now before this court], but is a simple power to sell and convey [In this case it is a power to confess a judgment]. As the power of one man to act for another depends on the will and license of that other, the power ceases when the will, or this permission, is withdrawn. The general rule, therefore, is, that a letter of attorney may, at any time, be revoked by the party who makes it; and is revoked by his death. But this general rule, which results from the nature of the act, has sustained some modification. Where a letter of attorney forms a part of a contract, and is a security for money, or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms, or if not so, it is deemed irrevocable in law. Although a letter of attorney depends, from its nature, on the will of the person making it, and may, in general, be recalled at his will; yet, if he binds himself for a consideration, in terms, or by the nature of his contract, not to change his will, the law will not permit him to change it."

To this point the *Hunt case* and the present action are parallel cases, with the *Hunt case* advantaged in having the power lodged in Hunt and not in a third person, who possesses no interest in the exercise of that power or the benefits that might flow from its utilization. Beyond this point one need not go to find ample reason for holding that insanity and adjudication should not revoke a power to confess judgment upon a power of attorney embodied in a note. The Hunt opinion continues:

"But does it retain its efficacy after his death? We think it does not. We think it well settled, that a power of attorney, though irrevocable during the life of the party, becomes extinct by his death."

In other words the power that Hunt possessed was but a naked power to convey an interest belonging to

Rousmanier in the two vessels. Hunt's power of attorney did not convey or assign any title or interest to him, but left the title in Rousmanier. It did make Hunt his agent and gave him irrevocable power, during Rousmanier's life, to sell those interests to satisfy his claims. He thereby could do what Rousmanier was then capable of doing. But when Rousmanier died, his capability ceased, and if Hunt's contention was correct, then he, as agent, could do what his principal could not do, that is, convey title that was in Rousmanier to another. Had Hunt had title, then unquestionably he would have prevailed.

Now has the appellee title or possession to anything by virtue of the cognovit note which she holds and sues upon. The answer is, unquestionably, no. The power gave her one thing, that being a different and advantageous remedy to pursue in the collection of her debt. She could waive issuance and service of process and waive errors in the procurement of the judgment, but the instrument in and of itself established no title, interest or estate in the payee or her assignee. In the case of a note secured by properly endorsed collateral security, with power of sale, one finds an interest, possession, and evidence of title in the payee. The instrument has conveyed or assigned to him certain property, and if his principal has died, the payee may nevertheless convey the property away, for title is in him and not in his deceased principal. Here is, in truth, found an irrevocable power coupled with an interest which survives death. The distinction in the two cases should be and is apparent.

Chief Justice Marshall then proceeds to generalize. He points out that the rule "admits of one exception." He asks this question and answers it:

"What is meant by the expression, 'a power coupled with an interest?' Is it an interest in the subject on which the power is to be exercised, or is it an interest

in that which is produced by the exercise of the power? We hold it to be clear that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. [Hunt had no created specific interest in the ships. Neither has appellee any such interests in the property of the estate of John A. Bachtel, other than as a general creditor.] In other words, the power must be engrafted on an estate in the thing. [In the *Hunt case* the intended thing was ships. In the present case no particular thing seems to have been contemplated.]

"The words themselves would seem to import this meaning. 'A power coupled with an interest,' is a power which accompanies, or is connected with, an interest. [If there is no interest there can be but a bare naked power.] The power and the interest are united in the same person. But if we are to understand by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united. [Here the appellee would have the power to exercise and from the judgment produce a lien.] The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases when the interest commences, and, therefore, cannot, in accurate law language, be said to be 'coupled' with it."

From this reasoning and conclusion it is clear that Hunt lost on his theory of an agency coupled with an interest. He did for the time being prevail upon his second point and procured relief against a mistake of law; but upon a second review, see 26 U. S. (1 Peters), 1, 7 L. Ed., 27, he lost on both counts.

If any doubt remains as to the court's actual conclusion on the first proposition in *Hunt* v. *Rousmanier* it should be removed by the statement of Justice Washington made in the first paragraph of the opinion of the case upon its second review. It there appears:

"It was decided, that the power of attorney, given by Rousmanier, the intestate, to the appellant, Hunt, authorizing him to make and execute a bill of sale * * * was a naked power, not coupled with an interest, which though irrevocable by Rousmanier, in his lifetime, expired on his death."

One further comment respecting *Hunt* v. *Rousmanier*. If it be noted as important that in that case the court had to deal with a power of attorney in an instrument separate from the notes, and in the present controversy the one is embodied in the other, then the answer is, that the court in the *Hunt case* considered the notes and warrant as part and parcel of a single contract.

It is our judgment that appellee's power of attorney to procure confession of judgment was a naked power. Although it was irrevocable during the life of the maker, it did not survive death. It was not "a power coupled with an interest," or within the exception to the general rule, that death revokes an agency. The attorney at law was without power and authority to confess a judgment on the note after death. If further precedent is desired, such may be found in the cases listed in the note appearing in 44 A. L. R., 1310 to 1315 inclusive.

Considering the question briefly, from a third standpoint, it may be said that if powers of attorney contained in the thousands of like cognovit or judgment notes which are daily given in the course of business, create agencies coupled with an interest, that survive the death of a maker and permit the confession of a judgment against a dead man, which may be converted into liens as against decedent's property by the simple expedient of execution and levy, then we might as well revise our laws that direct the settlement of decedent's estate, for if the law be otherwise, than as is herein found, a new class of preferred creditors

is created. The claim of general creditors would become precarious, prior claims jeopardized and rights of surviving spouses and dependent minors hopelessly confused.

The judgment of dismissal of appellant's petition is reversed and the cause remanded with instruction to vacate the judgment entered upon the note, upon tender of a sufficient answer, and for further proceeding in accordance with law.

*Judgment reversed.*

MONTGOMERY, P. J., and LEMERT, J., concur.